**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| A.A., *et al.*, | ) |
| | ) |
| *Plaintiffs,* | ) |
| | ) |
| v. | ) Case No. 1:25-cv-1819 (AJT/WEF) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| STATE, *et al.*, | ) |
| | ) |
| *Defendants.* | ) |
| | ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

## **INTRODUCTION**

The outcome of this action rests solely on two legal issues. *First*, this Court must decide whether the derivative Plaintiffs, who have approved I-730s, Refugee/Asylee Relative Petitions, and are *outside* the United States, are considered "asylees" and thus not subject to Presidential Proclamations 10949 and 10998, which forbid the entry of Afghan nationals into the United States. *Second*, if the Court concludes that the derivative Plaintiffs are considered asylees, this Court must also determine whether the doctrine of consular non-reviewability bars judicial review of Plaintiffs' claims. In short, the derivative Plaintiffs are *not* asylees because they are *outside* the United States. And even so, the doctrine of consular non-reviewability forbids review of any decision by consular officer on the admittance or exclusion of an alien abroad. Therefore, this Court should not entertain Plaintiffs' claims, and subsequently dismiss the Complaint either for failure to state a claim or for lack of jurisdiction.

In the alternative, if this Court is not inclined to dismiss the Complaint at this time, the Court should transfer the case to the United States District Court for the District of Maryland. While Defendants concede venue is appropriate in this Court, this action is more appropriate in the District of Maryland. The main issue in this case is whether USCIS granted the derivative Plaintiffs asylum status, and  USCIS is headquartered in Camp Springs, Maryland.

Therefore, for the reasons stated below, the Defendants respectfully request this Court dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(1) or (b)(6), or in the alternative, transfer this action to the United States District Court for the District of Maryland.

**<u>ARGUMENT</u>**

I.   **This Court Should Dismiss Plaintiffs' Claims for Lack of Subject Matter Jurisdiction.**

A.   **The principal Plaintiffs cannot assert the interests of their spouses and children and, thus, this Court lacks jurisdiction over the Complaint.**

The principal Plaintiffs lack standing. A plaintiff "generally must assert [their] own legal rights and interest," except in the limited circumstances, not present here, in which they have "third party standing to assert the rights of another." *Kowalski v. Tesmer*, 543 U.S. 125, 129–30 (2004) (citation omitted). A plaintiff cannot assert an independent right to the issuance of a boarding foil for their spouse or children. The principal Plaintiffs' claimed injury rests solely on alleged violations of rights of their spouses and children. However, as foreign nationals, these family members have no independent right to enter the United States. *Trump v. Hawaii*, 585 U.S. 667, 703 (2018); *Dep't of State v. Muñoz*, 602 U.S. 899, 908 (2024); *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972); *Romero v. Consulate of U.S., Barranquilla, Colombia*, 860 F. Supp. 319, 323 n.7 (E.D. Va. 1994) (Ellis, J); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Congress is entitled to set the conditions for an alien's lawful entry into this country and . . . as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause.") (citing *Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892)); *but see Raihanoune v. USCIS*, 2025 WL 510235, at *3 (E.D. Va. Feb. 13, 2025) (Giles, J.) (finding standing for U.S. citizen plaintiffs). Accepting Plaintiffs' assertion of standing here would be an end-run around their spouses' and children's inability to assert standing on their own behalf.

Because Plaintiffs lack standing to challenge the State Department's underlying boarding foils determination, they cannot challenge any aspect of the process that leads to that determination. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 342-43 (2016), *as revised* (May 24, 2016) (claim of procedural violation must demonstrate a concrete injury to a protected interest); *Int'l*

2

*Refugee Assistance Project v. Trump*, 883 F.3d 233, 258 (4th Cir.), *as amended* (Feb. 28, 2018) ("Plaintiffs must have standing for every claim."), *cert. granted, judgment vacated on other grounds*, 585 U.S. 1028 (2018); *cf. Patel v. Garland*, 596 U.S. 328, 338 (2022) (holding that jurisdictional stripping provision of 8 U.S.C. § 1252(a)(2)(B)(i) extends not just to the determination made by an agency, but to the entire underlying process). While Congress has established a comprehensive statutory framework for judicial review of decisions concerning the ability of certain aliens physically present in the U.S. to remain in this country, *see* 8 U.S.C. § 1252, neither that section nor any other provision of the INA provides for judicial review of visa eligibility determinations pertaining to aliens abroad.

For these reasons, the Court should dismiss Plaintiffs' Complaint for failing to satisfy Article III standing.

### B. The decision to issue or deny a boarding foil is within the discretion of a consular officer (Counts One and Two).[1]

The decision to issue or deny an alien a boarding foil is within the discretion of a consular officer. *See* 9 Foreign Affairs Manual ("FAM") 203.5-3 ("Consular officers perform services on behalf of DHS/USCIS to facilitate V92 case processing abroad and to verify the eligibility of the approved beneficiaries").

---

[1] Plaintiffs claim Defendants fail to address Count Two of the Complaint. *See* Pls' Br. Part II.A, at 14-15. Defendants contend that Plaintiffs pled their *Accardi* claim with their APA claims. *See* Compl. ¶¶ 212 ("[t]he State Department's application of Proclamation 10949 to derivative asylees violates agency rules, regulations, policies, and procedures"), 215 ("[t]he State Department's application of Proclamation 10949 to derivative asylees must therefore be set aside pursuant to the APA"). And "the [Supreme] Court appears to have held *sub silentio* that an *Accardi* claim is unreviewable where Congress has provided that an agency's discretionary decision is not subject to judicial review, even if the executive subsequently makes rules that limit that discretion." *Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 55 (D.D.C. 1998) (citing *Morris v. Gressette*, 432 U.S. 491, 505–07 (1977)) (emphasis in original). If the APA forbids challenging the actions of a consular officer here, this Court cannot review Plaintiffs' *Accardi* claims.

Therefore, because such decisions are "committed to agency discretion by law," this Court lacks jurisdiction to review such claims. *See* 5 U.S.C. § 701(a)(2); Defs' Br. Part II.B, at 13-16.

Plaintiffs mostly ignore most of Defendants' arguments, *see* Pls' Br. Part I.B., at 10-13, which includes a failure to recognize that "agency action," such as the discretionary decision by a consular officer, "is committed to the agency's discretion when *no* judicially manageable *standards* are available to *assess how and when an agency should exercise its discret*ion such that a court would have 'no law to apply.'" *Pharm. Coal. For Patient Access v. United States*, 126 F.4th 947, 964 (4th Cir. 2025) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830–31 (1985)) (emphasis added). That is the case here. Plaintiffs fail to identify—and *cannot* identify—any judicially manageable standards as to how and when a consular officer exercises its discretion in issuing a boarding foil.

Plaintiffs agree that the two-step inquiry set out in *Holbrook v. Tennessee Valley Auth.*, 48 F.4th 282, 290 (4th Cir. 2022)[2], governs this analysis. *See* Pls' Br. at 11. As to the first step, the Fourth Circuit has advised that past practice should guide this legal inquiry and that courts must look at three factors to determine whether an agency action is traditionally committed to agency discretion. *See Holbrook*, 48 F.4th at 290 (citing *Cheney*, 470 U.S. at 831-32). In analyzing these factors, this Court must conclude that the decision to grant or deny a boarding foil is committed to the discretion of a consular officer. *See* Defs' Br. at 14-15.

Plaintiffs claim the first factor, whether the discretion involves complicated interest-balancing of factors within an agency's expertise, *see Holbrook*, 48 F.4th at 290, "does not involve an intricate balancing test" and Defendants are merely "rubber-stamping a categorical ban on every

---

[2] An agency action is committed to agency discretion if such action passes the following two-part inquiry: (1) whether the kind of agency action at issue has been traditionally committed to agency discretion, and (2) whether the relevant statutory provisions intentionally limit the agency's discretion by setting guidelines or providing a limit. *See Holbrook v. Tennessee Valley Auth.*, 48 F.4th 282, 290 (4th Cir. 2022) (citing *Chaney*, 470 U.S. at 832) (cleaned up).

derivative asylee[.]" Pls' Br. at 11-12. Plaintiffs' statements are made on one incorrect and significant assertation: that the derivative Plaintiffs are asylees, and as discussed *infra*, Part III.A, at 9-13, and in Defendants' brief, *see* Defs' Br. Part III.A, at 16-19, they are not. Plaintiffs also ignore (and make no attempt to distinguish) the vast amount of Supreme Court authority recognizing that a consular officer's decision whether "to admit or to exclude an alien" "is *final* and *conclusive*." *Muñoz*, 602 U.S. at 908 (citing *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)) (internal quotations omitted); *see* Defs' Br. at 14-15 (citing cases). Such discretionary decisions by consular officers and how the executive exercises such authority must be weighed accordingly.

As for the second factor, Plaintiffs argue that because Defendants have "coercive power" over Plaintiffs and Plaintiffs have a liberty interest at stake, this factor weighs against discretion. *See* Pls' Br. at 12. Neither the principal Plaintiffs nor derivative Plaintiffs have any liberty interest at stake. Indeed, the Supreme Court made clear that the principal Plaintiffs, who attempt to reshape their interest into something it is not, *see* Pls' Br. at 12, have no liberty interest in having their spouses and children be admitted to the United States. *See Muñoz*, 602 U.S. at 916 ("Congress can use its authority over immigration to prioritize the unity of the immigrant family," "[b]ut the Constitution does not require this result") (citing *Kerry v. Din*, 576 U.S. 86, 97 (2015)); *id.* ("while Congress may show special solicitude to [alien] spouses, such solicitude is 'a matter of legislative grace rather than fundamental right.'") (citing *Din*, 576 U.S. at 97)).

The derivative Plaintiffs, which seek a discretionary form of relief in asylum, cannot have a liberty interest at stake because due process claims predicated on discretionary relief are *not* cognizable. *See Dekoladenu v. Gonzales*, 459 F.3d 500, 508 (4th Cir. 2006) ("No property or liberty interest can exist when the relief sought is discretionary."), *overruled on other grounds by*

*Dada v. Mukasey*, 554 U.S. 1 (2008) (emphasis added). The Supreme Court has made clear that "foreign nationals seeking admission have no constitutional right to entry." *Trump*, 585 U.S. at 703; *Muñoz*, 602 U.S. at 908 (same); *see Mandel*, 408 U.S. at 762 ("It is clear that Mandel personally, as an unadmitted and nonresident alien, had no constitutional right of entry to this country as a nonimmigrant or otherwise"). Therefore, none of the Plaintiffs have a property or liberty interest at stake, which weighs in Defendants' favor.

As for the third factor, Plaintiffs argue that "[t]he Fourth Circuit regularly reviews agency action in immigration cases, especially when an agency applies "a broad or general enforcement policy," rather than a "mingled assessment[] of fact, policy, and law that drive[s] an individual enforcement decision." Pls' Br. at 12-13 (citing *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 697–701 (4th Cir. 2019)). But in *Casa De Maryland*, the Fourth Circuit found that it had jurisdiction over the APA claims for two reasons: (1) the exercise of discretion was not in an individual case; and (2) the government did not cite to any statutory authority to act. *See* 924 F.3d at 698-99. Here, however, the decision to deny Plaintiffs boarding foils was made pursuant to the Presidential Proclamation, which is authorized under 8 U.S.C. § 1182(f), thus making *Casa De Maryland*'s holding inapposite to the facts here. And again, Plaintiffs ignore the fact that decisions by immigration officials are largely immune from judicial review. *See* 8 U.S.C. § 1252; *Muñoz*, 602 U.S. at 908 ("to admit or to exclude an alien" "is *final* and *conclusive*.") (citing *Knauff*, 338 U.S. at 543 (1950)) (internal quotations omitted).

As for part two of the *Holbrook* inquiry, Plaintiffs claim there are guidelines for the agency to follow that are set out by Congress. *See* Pls' Br. at 13. But there is no statutory authority for issuing a boarding foil; it is simply within a consular officer's discretion as to whether to grant or deny a boarding foil. *See LaMarche v. Mayorkas*, 2024 WL 2502929, at *5 (D. Mass. 2024); 9

FAM 203.5-3. Plaintiffs' citations to the FAM fair no better. *See* Pls' Br. at 13 (citing 9 FAM 203.5-9(b)). Indeed, the guidelines provided in FAM state that "INA 212(a) [8 U.S.C. § 1182(a)] inadmissibilities do not apply to V92 beneficiaries." 9 FAM 203.5-9(b). But Plaintiffs were not denied boarding foils pursuant to § 1182(a); they were denied boarding foils pursuant to § 1182(f). Defendants have clearly followed any applicable statutory guidelines.

Thus, a consular officer's refusal to issue a boarding foil meets the two-part *Holbrook* inquiry. These decisions are committed to agency discretion by law, and this Court cannot review them. *See* 5 U.S.C. § 701(a)(2); Defs' Br. at 13-16.

## II.    Plaintiffs Fail to State a Claim Upon which Relief Can Be Granted.

### A. Because the derivative Plaintiffs are *outside* the United States, they are not asylees and do not meet the asylum exception in Presidential Proclamations 10949 and 10998 (All Counts).

This case rests significantly on whether the derivative Plaintiffs are "asylees." "Here, as often is the case, the best interpretation is the straightforward one." *Jones v. Hendrix*, 599 U.S. 465, 480 (2023). For the reasons stated in their brief, *see* Defs' Br. Part III.A, at 16-19, and dispute Plaintiffs' arguments to the contrary, *see* Pls' Br. Part II.C, at 17-23, the derivative Plaintiffs are not asylees. Accordingly, this Court should thus dismiss Plaintiffs' Complaint in its entirety.

Defendants' argument could not be clearer. *See* Defs' Br., at 16-19. Although neither the INA nor its implementing regulations define "asylee," there is significant evidence via USCIS and State Department policy, and the INA and its regulations, that asylum status is only granted to aliens *physically present* in or who have *arrived in* the United States. *See id.* (emphasis added). Caselaw further supports Defendants' assertions. *See INS v. Cardoza-Fonseca*, 480 U.S. 421, 433 (1987); *Cela v. Garland*, 75 F.4th 355, 361 (4th Cir. 2023), *cert. denied,* 144 S. Ct. 2657 (2024); *Kiyemba v. Obama*, 555 F.3d 1022, 1030 (2009), *vacated on other grounds*, 559 U.S. 131 (2010)

7

(per curiam); *Yang v. INS*, 79 F.3d 932, 938 (9th Cir. 1996), *cert. denied*, 519 U.S. 824 (1996); *see also Azarmanesh v. Bondi*, 2025 WL 965955, at *11 n.9 (N.D. Cal. Mar. 31, 2025) (citing 8 U.S.C. §§ 1101(a)(42), 1158(b)(1)(A)). Indeed, the Supreme Court may address this issue soon. *See Noem v. Al Otro Lado*, 146 S.Ct. 604 (Mem), 223 L.Ed.2d 225 (2025) (granting certiorari); *id.*, Dkt. No. 25-5[3] (oral argument held March 24, 2026). Under Defendants' interpretation, once the derivative Plaintiffs are physically in the United States, they will be derivative asylees. And because Plaintiffs are outside the United States, they are not asylees and do not meet the exception in Presidential Proclamations 10949 and 10998.

In their brief[4], Plaintiffs *first* argue that Defendants attempt to read in an additional requirement to the Presental Proclamations that Plaintiffs be inside the United States to be granted asylum. *See* Pls' Br. at 17-18. But this is simply not the case. The proclamations make clear that they "shall not apply to *an individual who has been granted asylum*." 90 Fed. Reg. 24497, 24504 (June 4, 2025); *id.* 59717, 59828 (Dec. 16, 2025) (emphasis added). And the Supreme Court has stated that asylum may only be granted when an individual is *inside* the United States. *See Cardoza-Fonseca*, 480 U.S. at 433 (explaining 8 U.S.C. § 1157 "governs the admission of refugees who seek admission from foreign countries," 8 U.S.C. § 1158 "sets out the process by which refugees currently in the United States *may be granted asylum*.") (emphasis added); *see also* Refugee Act of 1980, Pub. L. No. 96-212, § 201(b), 94 Stat. 105 (adding Section 208 of the INA, to be codified as 8 U.S.C. 1158). Indeed, the INA distinguishes between asylum under § 1158 and refugee admission under § 1157. *See* 8 U.S.C. §§ 1101(a)(42), 1157(c)(1), 1158(b)(1)(A).

---

[3] The docket is retrievable at: https://www.supremecourt.gov/docket/docketfiles/html/public/25-5.html (last accessed Mar. 27, 2026).

[4] Plaintiffs additionally claim that "USCIS's own guidance treats the I-730 approval as a grant." Pls' Br. at 19 (citing USCIS Policy Manual, Vol 4, Part C, ch. 5). But Defendants found nothing in such citation that states that granting an I-730 confers asylum status.

*Second*, Plaintiffs attempt to distinguish Defendants' cited authority. *See* Pls' Br. at 20-22. Plaintiffs claim that USCIS and the State Department's definitions of "asylee" only apply to *principal* asylees and not to derivative asylees. *Id.* at 20; *see id.* at 20-21. (emphasis added). Unlike Defendants, Plaintiffs provide no support for their distinction. Plaintiffs cannot simply create a new definition of who is and is not an asylee out of whole cloth.

*Third*, Plaintiffs also argue that the caselaw and legislative history[5] cited by Defendants is inapposite to this case mainly because none address the follow-to-join statutory provision at 8 U.S.C. § 1158(b)(3). *See* Pls' Br. at 21. "[S]tatutes can be sensibly understood only 'by reviewing text in context.'" *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 392 n.4 (2024) (quoting *Pulsifer v. United States*, 601 U.S. 124, 133 (2024)). And legislative history may demonstrate "clear evidence of congressional intent [and] may illuminate ambiguous text." *Delaware v. Pennsylvania*, 598 U.S. 115, 138-39 (2023) (quoting *Milner v. Dep't of Navy*, 562 U.S. 562, 572 (2011)) (internal quotations omitted). And the legislative history surrounding the Refugee Act of 1980, which included § 1158(b)(3), is clear that those may only have asylum status when they are *inside* the United States. *See* S. Rep. No. 96-256, at 9 (1980) (finding the Refugee Act required the Attorney General to establish procedures for "determining asylum claims filed by aliens who are *physically present* in the United States") (emphasis added).

*Fourth*, Plaintiffs next contend that Defendants' interpretation would lead to an absurd result "that the family members of principal asylees could only be granted asylum if they themselves demonstrated eligibility for asylum under Section 1158," Pls' Br. at 21 (citing *United States v. Young*, 989 F.3d 253, 260 (4th Cir. 2021)). , This is neither accurate nor true. Plaintiffs

---

[5] Indeed, Defendants' citation to Congress' committee report on the Refugee Act of 1980 is "more authoritative" than other legislative history. *See Garcia v. United States*, 469 U.S. 70, 76 (1984).

9

will become derivative asylees once they are *physically inside* the United States. *See Cardoza-Fonseca*, 480 U.S. at 433; *Cela*, 75 F.4th at 361.

*Fifth*, Plaintiffs find it "alarming that . . . USCIS could terminate [a] Derivative Asylee['s] asylum status based on their return to Afghanistan." Pls' Br. at 22. Plaintiffs also claim that the State Department forced the derivative Plaintiffs to return to Afghanistan after consular officers refused to issue them boarding foils after their interviews in the countries around Afghanistan. *See id.* As an initial matter, Plaintiffs provide no evidence, nor can they, that the State Department *forced* Plaintiffs to return to Afghanistan. Simply put, the State Department has no control over where the derivative Plaintiffs go to live their lives, including whether or not they to return to Afghanistan.

While Plaintiffs may find it alarming that USCIS could terminate asylee status if the asylee returns to their home country, the INA and Fourth Circuit made clear that *anyone* with asylum status who returns to the country from which they were granted asylum can have that status terminated. *See* 8 U.S.C. § 1158(c)(2)(D); *Cela* 75 F.4th at 361 ("asylum status can be terminated . . . [if] the alien has availed himself of his own country of nationality by returning there"). Congress did not say that such termination of asylum status is only for *principal* asylees. *See id.* And "this Court may not narrow a provision's reach by inserting words Congress chose to omit." *Lomax v. Ortiz-Marquez*, 590 U.S. 595, 600 (2020). Therefore, it is clear that such statutory provision applies equally to principal *and* derivative asylees.

*Finally*, Plaintiffs make several arguments[6] claiming the proclamations do not apply to them. *See* Pls' Br. at 22-23. Plaintiffs point out that the proclamations only apply to "immigrants

---

[6] Plaintiffs too provide no evidence that they *affirmatively* sought asylum with a consular officer at their interviews.

and nonimmigrants" and because the derivative Plaintiffs are neither, the proclamation does not apply to them. *See id.* Plaintiffs, however, meet the definition of "immigrant" as outlined in the INA. *See* 8 U.S.C. § 1101(a)(15) ("The term 'immigrant' means *every alien* except an alien who is within one of the following classes of nonimmigrant aliens"). But the derivative Plaintiffs do not fall within any one of the nonimmigrant classes in § 1101(a)(15). Therefore, they would be interpreted as being an "immigrant" and subject to the proclamations.

Plaintiffs further counter that "Defendants [have not] provide[d] any explanation" for applying the proclamation to derivative Plaintiffs when they would have been previously eligible in a similar 2017 proclamation. *See* Pls' Br. at 23. But the language in the 2017 proclamation provided different exceptions than the 2025 proclamations. Unlike the 2025 proclamations, the 2017 proclamation contained a specific exception for "any foreign national who has a document other than a visa—such as a transportation letter, an appropriate boarding foil, or an advance parole document—valid on the applicable effective date [of that proclamation] or issued on any date thereafter, that permits him or her to travel to the United States and seek entry or admission." Proclamation No. 9645, § 3(b)(iii), 82 Fed. Reg. 45161, 45168 (Sept. 24, 2017). This exception is *not* in either of the 2025 proclamations. *See* 90 Fed. Reg. at 24503; *id.* at 59726-27 (emphasis added).

In short, Defendants presented significant evidence, through caselaw, agency interpretation, statutory interpretation, regulatory interpretation, and legislative history, demonstrating that an alien can only be granted asylum, whether themselves or through a relative, if they are *inside* the United States. *See* Defs' Br. at 16-19 (emphasis added). The derivative Plaintiffs here are not inside the United States and may not be granted asylum. They are thus not exempt from the Presidential Proclamations.

11

Therefore, this Court should dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted.

**B. The Consular Officers' decisions to deny Plaintiffs boarding foils is subject to the Doctrine of Consular Non-reviewability.**

Plaintiff cannot state a claim upon which relief can be granted because federal courts are barred from reviewing a denial of a boarding foil under the doctrine of consular non-reviewability. *See* Defs' Br. Part III.B, at 19-21; *LaMarche v. Mayorkas*, 2024 WL 2502929, at *5 (D. Mass. 2024) ("if the Plaintiffs could not proceed to the United States because they are denied a boarding foil based on information discovered by a consular officer during consular security processing, this court could provide no relief.").

The doctrine of consular non-reviewability "instructs that ordinarily 'it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.'" *Sesay v. United States*, 984 F.3d 312, 315 (4th Cir. 2021) (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). The Supreme Court reaffirmed and recognized this doctrine and its scope in *Muñoz. See* 602 U.S. at 907-08. In *Muñoz*, the Supreme Court recognized "the longstanding principle that the U.S. can, as a matter of public policy . . . forbid aliens or classes of aliens from coming within its borders, and no limits can be put by the courts upon that power." 602 U.S. at 915 (quoting *Wong Wing v. United States*, 163 U.S. 228, 237 (1896)) (cleaned up). And thus, "the action of an executive officer 'to admit or to exclude an alien' 'is final and conclusive.'" *Id.* at 908 (citing cases); *see also Sesay*, 984 F.3d at 315-16 ("the admission and exclusion of those seeking entry is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control"). The State Department's decision to refuse issuing Plaintiffs' spouses and children boarding foils falls within such doctrine. *See LaMarche*, 2024 WL 2502929, at *5; *see*

12

*also Sesay*, 984 F.3d at 315 ("judicial deference is required where executive officials, such as the consular officer here, possess expertise in matters falling outside judicial competency, including local conditions in foreign countries, diplomatic relationships and protocols, and national security needs") (citing *Negusie v. Holder*, 555 U.S. 511, 517 (2009)).

In their brief, Plaintiffs *first* claim that they "do not challenge any consular official's individualized determination of eligibility." Pls' Br. Part II.B, at 15. They claim to be challenging the application of the Presidential Proclamations. *See id.* This argument simply ignores the fact that a consular officer still made a *decision* "to admit or to exclude [] [Plaintiffs]" which "is final and conclusive." *Muñoz*, 602 U.S. at 908 (citing cases). That *decision* is the basis for Plaintiffs' Complaint. *See* Compl. ¶ 205 (the State Department has wrongfully denied boarding foils to the Derivative Plaintiff[s]") (emphasis added). And because that decision is subject to consular non-reviewability, this Court cannot hear Plaintiffs' challenges to the application of the proclamations. *See Ameen v. U.S. Dep't of State*, 2024 WL 3416264, at \*3 (E.D. Va. July 15, 2024) (Nachmanoff, J.).

*Second*, Plaintiffs claim that the proclamations "*take[] away* consular officers' ability to render individualized eligibility determinations." Pls' Br. at 16 (emphasis in the original). But in order to make an eligibility determination, a consular officer must look at the surrounding facts regarding the alien to see whether the alien is eligible to be granted entry into the United States. This includes determining Plaintiff's nationality. *See* 9 FAM 203.5-2. Because a consular officer determined that derivative Plaintiffs were Afghani nationals subject to § 1182(f), the officer did in fact conduct the "individualized determination" that Plaintiffs seek.[7]

---

[7] The remainder of Plaintiffs' arguments focus on distinguishing the cases Defendants cite in their brief. *See* Pls' Br. at 16-17 (citing cases). Defendants concede that the factual circumstances of the

Because the doctrine of consular non-reviewability prohibits judicial review of the boarding foil process, the Court should dismiss Plaintiff's Complaint.

**C. The Plaintiffs have no fundamental liberty interests at stake to state a Fifth Amendment claim (Count Three).**

Plaintiffs fail to provide any facts or evidence[8] justifying their claims that Defendants violated Plaintiffs' Fifth Amendment due process rights. As made clear, *supra*, at 7-9, neither the principal Plaintiffs nor the derivative Plaintiffs have a liberty interest at issue in this action. This Court should dismiss Count Three of the Complaint.

 1. *The principal Plaintiffs do not have a fundamental liberty interest in the admission of their spouses or children.*

The principal Plaintiffs have no liberty interest in being in the United States with their spouses or children. *See Muñoz*, 602 U.S. at 915-16; *see also Owusu-Boakye v. Barr*, 376 F. Supp. 3d 663, 680–81 (E.D. Va. 2019) ("[T]o read . . . cases recognizing the fundamental right of marital choice as standing for the proposition . . . that an individual has a protected liberty interest in residing with an alien spouse in the [U.S.], is a bridge too far."), *aff'd on other grounds*, 836 F. App'x 131 (4th Cir. 2020).

Recently, the Supreme Court addressed whether a U.S. citizen had a fundamental liberty interest in the admission of her spouse to the U.S. *See Muñoz*, 602 U.S. at 911-16. There, the Court found that the U.S. citizen plaintiff failed to demonstrate "the right to bring a[n] [alien] spouse to the [U.S.] is "'deeply rooted in the Nation's history and tradition.'" *Id.* at 911 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)). Justice Barrett stressed that "Congress can use its

---

cases they cite differ from those presented in the Complaint, but maintain that the legal rationales still apply in this case.

[8] Significantly, Plaintiffs do not even attempt to distinguish the application of *Muñoz* to their case nor make clear what "fundamental liberty interest" is at issue in their brief.

authority over immigration to prioritize the unity of the immigrant family," *see id.* at 916 (citing *Din*, 576 U.S. at 97), "[b]ut the Constitution does not require this result." *Id.* at 916. Justice Barrett reasoned that "while Congress may show special solicitude to [alien] spouses, such solicitude is 'a matter of legislative grace rather than fundamental right.'" *Id.* (citing *Din*, 576 U.S. at 97). Although the Court conceded Muñoz suffers an indirect harm, *see Muñoz*, at 917, in the denial of her husband's visa application, "that harm does not give her a constitutional right to participate in his consular process." *Id.* at 917.

Therefore, if the Plaintiffs have no liberty interest in their spouses being admitted, it follows that they in turn cannot have a liberty interest in their issuance of a boarding foil. Indeed, other jurists of this Court recently applied *Muñoz* to hold there was no such due process liberty interest. *See Raihanoune*, 2025 WL 510235, at *4 ("If the burden of not living with one's spouse cannot compel admittance to the country, how can that same burden suffice to compel adjudication. It cannot."); *Ameen*, 2024 WL 3416264, at *4 ("Under *Muñoz*, plaintiff cannot state a due process claim [. . .] because she does not have a constitutionally protected liberty interest in her spouse obtaining a visa.").

    2. *The derivative Plaintiffs, as foreign nationals, have no fundamental liberty interest in their entry into the United States.*

The Supreme Court could not make clearer that the derivative Plaintiffs are not entitled to entry into the United States. *See Trump*, 585 U.S. at 703 ("foreign nationals seeking admission have no constitutional right to entry."); *Muñoz*, 602 U.S. at 908 (same); *see Mandel*, 408 U.S. at 762; *see also Wilson v. Zeithern*, 265 F. Supp. 2d 628, 631 (E.D. Va. 2003) (observing that "admission to the [U.S.] is a privilege, and an alien seeking admission to the [U.S.] has no constitutional rights regarding his application" (internal quotation omitted)).

Plaintiffs attempt to discredit Defendants' position by explaining the difference between a

15

boarding foil and visa. *See* Pls' Br. at 26. But whether it be a boarding foil or visa, this Court's "inquiry into matters of *entry* and national security is highly constrained." *Trump*, 585 U.S. at 704 (citing *Mathews v. Diaz*, 426 U.S. 67, 81-82 (1976)) (emphasis added). For any decision regarding the entry of a foreign national, "[t]he Judicial Branch has no role to play 'unless expressly authorized by law.'" *Muñoz*, 602 U.S. at 908 (quoting *Knauff*, 338 U.S. at 543). And because the INA does not authorize this Court to review the denial of Plaintiffs' boarding foils, "[this Court] cannot review those decisions." *Id.* Indeed, if *Trump* and *Muñoz* allow the Executive Branch to deny entry to immigrants and nonimmigrants, and such denials do not create a constitutional violation, it certainly follows that it can deny entry to those who are seeking derivative asylee status.

As the Fourth Circuit made clear, an alien or a U.S. citizen cannot have a property or liberty interest in a discretionary benefit. *Dekoladenu v. Gonzalez*, 459 F.3d 500, 508 (4th Cir. 2006), *overruled on other grounds by Dada v. Mukasey*, 554 U.S. 1, 128 (2008); *Ali v. U.S. Dep't of State*, 676 F. Supp. 3d 460, 472-73 (E.D.N.C. 2023); *see also Smith*, 295 F.3d at 430 ("On many occasions this circuit has held that discretionary statutory 'rights' do not create liberty or property interests protected by the Due Process Clause."). A boarding foil *is* a discretionary benefit. *See* 9 FAM 203.5-3. Similarly, the underlying status the derivative plaintiffs seek, derivative asylee status, is also discretionary. *See* 8 U.S.C. § 1158(b)(3)(A); *Maldonado-Perez v. I.N.S.*, 865 F.2d 328, 332 (D.C. Cir. 1989) ("There is no constitutional right to political asylum itself."); *Ayala v. USCIS*, 2025 WL 2682258, at *4 (E.D. Va. Sept. 15, 2025) (decision on derivative asylee status is discretionary). Plaintiffs are unable to claim a viable liberty interest at issue in this action.

Therefore, Plaintiffs' Fifth Amendment claims must be dismissed, and the Court should dismiss Count Three of the Complaint.

16

**D. Plaintiffs' void for vagueness claim fails because the government clearly defines "asylee" and *Trump v. Hawaii* confirms that the President's authority vested in 8 U.S.C. § 1182(f) is not an arbitrary enforcement (Count Four).**

Because USCIS and the State Department make clear that the derivative Plaintiffs are not considered "asylees," and that USCIS is not arbitrarily enforcing 8 U.S.C. § 1182(f), Court Four of the Complaint must fail. *See* Defs' Br. at 25-26.

Plaintiffs' arguments rest on them being "asylees." *See* Pls' Br. at 28-29. But USCIS and the State Department clearly define "asylee." *See* USCIS, *Glossary Terms*, Asylee[9]; 9 FAM 203.2-2; *see also supra* at 9-13. "[W]hether [the proclamations] [are a] sound policy or not isn't [the Court's] call. [Courts] ask only whether the policy is unconstitutionally vague." *Nat'l Ass'n of Diversity Officers,* 2026 WL 321433, at *8. Presidential Proclamations 10949 and 10998, like the ones at issue in *Trump v. Hawaii*, provide great detail as to why the President suspended entry from those countries. *See* 90 Fed. Reg. 24497, 24499; 90 Fed. Reg. 59717. Plaintiffs are provided adequate notice and are not subject to any arbitrary enforcement.

Therefore, the application of Presidential Proclamation 10949 and 10998 are not void for vagueness, and this Court should dismiss the Complaint.

**III.    In the Alternative, Transfer to the District Court for the District of Maryland is Warranted.**

If this Court is not inclined to dismiss the Complaint at this time, this action should be transferred to the U.S. District Court for the District of Maryland, which is a more appropriate judicial forum. *See* 28 U.S.C. § 1404(a) ("in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought"); *Karaoglu v. U.S.*

---

[9] Retrievable at: https://www.uscis.gov/glossary-term/50691 (last accessed Mar. 26, 2026).

*Dep't of Homeland Sec.*, 2023 WL 4627277, at \*2 (D. Md. July 19, 2023) ("Even if venue is facially proper, . . . a transfer can be granted.").

There is no question that this case could have been brought in the U.S. District Court for the District of Maryland. *See* 28 U.S.C. § 1391(e)(1) ("A civil action in which a defendant is . . . any agency of the United States . . . may . . . be brought in any judicial district in which (A) a defendant in the action resides, [or] (B) a substantial part of the events or omissions giving rise to the claim occurred, . . . or (C) the plaintiff resides[.]"). Accordingly, this Court has broad discretion to determine whether transfer there is appropriate, and in doing so considers the following factors: "1) the weight accorded the plaintiff's choice of venue; 2) witness convenience and access; 3) convenience of the parties, and 4) the interest of justice." *Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). Each factor weighs in favor of transfer and is discussed below.

Defendants rest on their arguments they made in their memorandum of law in support of their motion to dismiss ("Defs' Br.") and maintain that dismissal is appropriate at this juncture. *See* Defs' Br. Part I, at 8-11. Nonetheless, Plaintiffs claim, without support, that "Defendants [] seek to delay judicial review by transferring the case."[10] Plaintiffs' memorandum of law in opposition to Defendants motion to dismiss ("Pls' Br."), at 1. Plaintiffs provide *no* evidence of any improper delay and fail to recognize that this case certainly could have been brought in the U.S. District Court for the District of Maryland. *See* 28 U.S.C. § 1391(e)(1)(A) (noting venue may be

---

[10] Defendants are puzzled by Plaintiffs' assertion that Defendants are seeking to delay judicial review of this case for several reasons. *First*, counsel for Plaintiffs indicated *some* interest in having this case transferred to the U.S. District Court for the District of Maryland. And *second*, Plaintiffs requested (to which the Defendants agreed after seeking extensions of their own) further time to brief their response to Defendants' motion instead of the normal briefing schedule timeline set out in Local Civ. R. 7(F)(1). *See* Doc. No. 42, Joint Motion for Extension of Time to File Response/Reply.

brought in any district a Defendant resides); Pls' Br. Part III, at 30 n.7 (conceding USCIS's principal place of business is Camp Springs, Maryland).

Plaintiffs also claim that witness convenience is not a factor here because this case involves an administrative record. *See* Pls' Br. at 30 (citing *Chernari v. USCIS*, 2024 WL 895111, at *2 (D. Md. Mar. 1, 2024)). But in the joint discovery plan, see Doc. No. 53, Plaintiffs note that they "intend to seek and rely on Plaintiff-specific documents that may not be designated by Defendants as part of the [certified administrative record]." *Id.* at 3. Indeed, Plaintiffs even imply that they will be seeking additional discovery as to their constitutional claims. *See id.* at 4.

This action could and should have been brought in the United States District Court for the District of Mayland. There is no substantial nexus between the instant Complaint and this district. Based on the weight accorded the Plaintiffs' choice of venue, convenience of the parties, convenience of the witnesses, and the interest of justice, this Could should exercise its broad discretion to transfer this case to the District of Maryland.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiffs' Complaint in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or, in the alternative, transfer this action to the U.S. District Court for the District of Maryland.

//

//

19

Dated: March 27, 2026

Respectfully submitted,

TODD W. BLANCHE
DEPUTY ATTORNEY GENERAL

*By*:      _____/s/_____
CHRISTIAN J. COOPER
Special Assistant United States Attorney
ELIZABETH A. SPAVINS
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:  (703) 299-3831
Fax:  (703) 299-3983
Email: christian.cooper@usdoj.gov
          lizzie.spavins@usdoj.gov
*Counsel for Defendants*

20