**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| A.A., *et al.*, | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | )   Case No. 1:25-cv-1819 (AJT/WEF) |
| | ) |
| UNITED STATES DEPARTMENT OF | ) |
| STATE, *et al.*, | ) |
| | ) |
| *Defendants*. | ) |
| | ) |

**RESPONSE IN OPPOSITION TO PLAINTIFFS'**
**MOTION TO COMPEL**

**INTRODUCTION**

A certified administrative record is not comprised of all the documents a plaintiff might seek in discovery. In their motion to compel, Plaintiffs seek voluminous documents neither relevant to this action nor relevant to the Department of Homeland Security's ("DHS's") determination that aliens with approved asylee relative petitions (in this case, referred to as derivative Plaintiffs) are not considered asylees and thus subject to Presidential Proclamations 10949 and 10998. The Defendants have provided a complete administrative record on *DHS's determination* that the derivative Plaintiffs are not considered asylees and thus subject to the proclamations. This Court should thus not entertain Plaintiffs' fishing expedition into what they believe should be included in an administrative record. It is the agency's determination as to what is in their own administrative record, and Plaintiffs fail to show clear evidence showing that the administrative record is not complete.

This Court should deny Plaintiffs' motion to compel for several reasons. First, Plaintiffs fail to provide clear evidence that documents are missing from the administrative record. Plaintiffs simply ignore the fact that the agency is presumed to have submitted a certified administrative record, and that privileged material is not included in an administrative record. Second, most of Plaintiffs' requests involve State Department cables that have no relevance on DHS's legal determination that the derivative Plaintiffs are not asylees and thus subject to the proclamations. Indeed, most of the requests Plaintiffs seek involve decisions made after DHS determined that aliens with approved asylee petitions are not asylees for the purposes of the proclamations.

Therefore, this Court should deny Plaintiffs' motion to compel.

1

## BACKGROUND

### A.  Procedural History

On or about February 11, 2026, Defendants moved to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. *See* Dkt. 39, 40. Following the filing of Defendants' motion to dismiss, this Court issued a scheduling order commencing discovery. See Dkt. 44. In light of the dispositive motion pending before the Court, Defendants moved to vacate the scheduling order, which Plaintiffs opposed. *See* Dkt. 49, 52. The parties also submitted a Joint Proposed Discovery Plan on March 18, 2026. *See* Dkt. 53 This Court denied Defendants' motion to vacate the scheduling Order, *see* Dkt. 23, and scheduled the initial pre-trial conference as a hearing for March 27, 2026, *see* Dkt. 55.

At the hearing, Plaintiffs confirmed "that the traditional scope [of an administrative record] and that what Defendants had in mind were the *pre-decisional documents* that went into the *creation of the policy* [to deny aliens with approved asylee petitions boarding foils]." Dkt. 65-2, Exhibit A, at 5:24-6:02 (emphasis added). This Court then issued its Rule 16(b) Scheduling Order, which provided that the "Defendants shall produce the Certified Administrative Record to Plaintiffs on or before April 15, 2026." Dkt. 58. On April 15, 2026, Defendants provided Plaintiffs with the certified administrative record via email. *See* Dkt. 65-5, Exhibit D, PageID#624. That same day, Defendants also emailed Plaintiffs to explain that they planned to produce additional documents *outside the scope* of the administrative record between April 29 and May 1. *Id*. at 623. These documents included the alien files of the twenty-eight (28) derivative Plaintiffs, an exemplar alien file from one of the principal Plaintiffs, and additional post-decision documents from the Department of State. *Id.*

2

Later that evening, Plaintiffs reached out to Defendants to see up a call to discuss the certified administrative record and other discovery issues. *Id.* at 629. Defendants responded the next morning at 9:00 a.m. (April 16) and explained that Defendants were unable to meet that day due to other litigation responsibilities with other cases, but were available in the afternoon of April 17. *Id.* at 622. Plaintiffs responded quickly to say the afternoon of April 17 "would be too late" to confer because they wished to "compel supplementation" of the administrative record by the afternoon of April 17 due to the record being "manifestly deficient." *Id.* At 10:00 a.m., Defendants told Plaintiffs that counsel would converse to see if they were available the morning of April 17. *Id.* at 621. Defendants also asked Plaintiffs for what they believed was missing from the administrative record so that counsel could ask the relevant agencies about said documents. *Id.* It was not until 12 hours later, late in the evening the night before Plaintiffs filed their motion to compel, that Plaintiffs provided a lengthy list of types of documents Plaintiffs believe should be in the administrative record. *Id.* at 618-20. Pursuant to the Local Rules, the parties met and conferred regarding the administrative record the morning of April 17, 2026. S*ee id.* at 615-17 (email memorialization of the call).

## B. The Instant Motion to Compel

On April 17, 2026, Plaintiff filed a motion to compel Defendants to complete the administrative record. *See* Dkt. 64, 65. Despite the laundry list of alleged deficiencies Plaintiffs brought up prior to the meet and confer, *see* Dkt. 65-5, Exhibit D, PageID#618-20, Plaintiffs only request the following six types of documents in their motion:

(1) Documents involving "DHS['s] determine[ation] that Following-to-Join Asylee (FTJ-A) V92/YY beneficiaries from suspended countries are subject to PP 10949."

(2) Prior Guidance regarding the alleged "Updated" State Department Cable provided in the administrative record.

3

(3) State Department Cables 25 STATE 55146 and 25 STATE 44754

(4) State Department Cable 25 STATE 102426

(5) State Department Cable 25 STATE 108252

(6) Documents explaining why Plaintiffs received denials of boarding foils prior to the issuance of the State Department Cable provided in the administrative record.

Plaintiffs' memorandum in support of their motion to compel ("Pl.'s Br.") at 3-4.

## ARGUMENT

### I. This Court should Deny Plaintiffs' Motion to Compel Because Plaintiffs fail to provide "clear evidence" that the Certified Administrative Record is incomplete.

Plaintiffs claim that the Defendants' decisions to deny derivative Plaintiffs boarding foils is arbitrary and capricious under the APA because derivative Plaintiffs are considered "asylees." Compl. ¶¶ 193-210. That is the heart of this case: whether derivative Plaintiffs are considered "asylees."[1] And on April 15, 2026, the Defendants provided Plaintiffs with a complete certified administrative record in connection with the issue. Plaintiffs fail to show clear evidence showing that the AR is not complete. Thus, this Court should deny Plaintiffs' motion.

"The focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973) (per curiam); *see SourceAmerica v. United States Dep't of Education*, 2018 WL 10436584, at *2 (E.D. Va. July 5, 2018) (Ellis, J.) (same). "An allegation that the administrative record is 'incomplete' does not justify discovery unless the plaintiff can demonstrate that the record

---

[1] Indeed, the Supreme Court may address soon the issue of whether an alien *outside* the United States can affirmatively seek asylum. *See Noem v. Al Otro Lado*, 146 S.Ct. 604 (Mem), 223 L.Ed.2d 225 (2025) (granting certiorari); *id.*, Dkt. No. 25-53 (oral argument held March 24, 2026) (docket retrievable at: https://www.supremecourt.gov/docket/docketfiles/html/public/25-5.html) (last accessed Apr. 22, 2026).

is so bare as to 'frustrate judicial review.'" *SourceAmerica*, 2018 WL 10436584, at *2 (citing *Am. Canoe Ass'n v. U.S. EPA*, 46 F. Supp. 2d 473, 477 (E.D. Va. 1999)). Notably absent from Plaintiffs' motion is the acknowledgment that the Fourth Circuit "[has] long recognized that public officials enjoy a 'presumption of regularity' in the performance of their official duties." *Mestanek v. Jaddou*, 93 F.4th 164, 172 (4th Cir. 2024) (citing *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1368 (4th Cir. 1975)); *see United States v. Armstrong*, 517 U.S. 456, 464 (1996). "And [] when an agency certifies that the administrative record it has provided to the court is complete, courts generally presume it to be so absent clear evidence to the contrary." *Mestanek*, at 172 (citing *Outdoor Amuse. Bus. Assn., Inc. v. DHS*, 2017 WL 3189446, at *12 (D. Md. July 27, 2017) (collecting cases)); *see Sanitary Board of City of Charleston, West Virginia v. Wheeler*, 918 F.3d 324, 334 (4th Cir. 2019) ("courts will ordinarily assume that the administrative record is complete and exclusive for purposes of judicial review"). This presumption of regularity is "strong." *Kravitz v. U.S. Dep't of Comm.*, 336 F. Supp. 3d 545, 570 (D. Md. 2018); *see Wheeler*, 918 F.3d at 334 (noting a challenge to the administrative record "bears a special burden").

"Clear evidence may be demonstrated by a strong, substantial, or prima facie showing that the record is incomplete." *Tafas v. Dudas*, 530 F. Supp. 2d 786, 795 (E.D. Va. 2008) (Cacheris, J.) (internal quotations omitted). But "such supplementation [of the record] is warranted only 'if the agency deliberately or negligently excluded documents that may have been adverse to its decision,' 'if background information was needed to determine whether the agency considered all the relevant factors,' and 'if the agency failed to explain administrative action so as to frustrate judicial review.'" *CASA, Inc. v. Noem*, 2025 WL 3514378, at *9 (D. Md. Dec. 8, 2025) (quoting *City of Dania Beach v. Fed. Aviation Admin.*, 628 F.3d 581, 590 (D.C. Cir. 2010)); *see also Brandon v. Nat'l Credit Union Ass'n*, 115 F. Supp. 3d 678, 684 (E.D. Va. 2015) (Ellis, J.).

5

Plaintiffs are correct that APA review is based on "the whole record or those parts of it cited by a party."  5 U.S.C. § 706.  Plaintiffs, however, are mistaken about the meaning of the term "whole record."  First, the administrative record comprises materials that were considered "directly or indirectly" by the decisionmaker.  *Tafas*, 530 F. Supp. 2d at 795.  It "does not include privileged materials, such as documents that fall within the deliberative process privilege, attorney-client privilege, and work product privilege."  *Id.* at 794. Relevant here, "courts have consistently recognized that, for the purpose of judicial review of agency action, deliberative materials antecedent to the agency's decision fall outside the administrative record."  *Comprehensive Comm'y Dev. Corp. v. Sebelius*, 890 F. Supp. 2d 305, 312 (S.D.N.Y. 2012).  Accordingly, "intra-agency memoranda and other such records need not be included in the record."  *Outdoor Amusement*, 2017 WL 3189446, at *14 (cleaned up).  It is the "stated reasons" for the agency's final decision that are relevant to APA review, not reasons debated prior to the final decision.  *Tafas*, 530 F. Supp. 2d at 797.  Such deliberative materials, such as the internal documents involving DHS's determination that derivative Plaintiffs are not asylees, which Plaintiffs request, *see* Pl.'s Br. at 3 (request (1)), are "irrelevant as a matter of law" and thus properly excluded from the administrative record. *Tafas*, 530 F. Supp. 2d at 797.

This Court cannot compel an agency to produce documents that Plaintiffs do not even know exist. *See*, *e.g.*, *Hampton University v. Accreditation Counsel for Pharmacy Education*, 2021 WL 3166380, at *14 (E.D. Va. July 27, 2021) (holding plaintiff could not overcome the presumption of regulatory when plaintiff was "unable to identify specific documents . . . that were improperly excluded from the record"); *see also McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 484 (4th Cir. 2014) ("non-movants must put the district court on notice as to which specific facts are yet to be discovered."). This is especially true if a request is based on

mere speculation, like Plaintiff's request (2) for previous guidance on follow-to-join asylees, *see* Pl.'s Br. at 4. *See Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995); *Levesy v. Scolese*, 2023 WL 5835763, at *6 (E.D. Va. Sept. 7, 2023) (Alston, J.), *aff'd*, 2024 WL 1366769 (4th Cir. Apr. 1, 2024).

In fact, Defendants did not directly or indirectly rely on documents (3), (4), (5), and (6) of the aforementioned requests in making the legal interpretation that Plaintiffs seek to challenge. This is because the cable 25 STATE 73478, which the State Department provided in the administrative record, clearly states that "*DHS determined* that Following-to-Join Asylee [] beneficiaries from suspended countries are subject to PP 10949." STATE00001. And as Defendants explained in their previous filings, *see* Dkt. 40, consular officers are acting as agents of *DHS*. *See* 9 Foreign Affairs Manual 203.5-3 (emphasis added). The consular officers did not need to look at the referenced cables Plaintiffs believe should be included in the administrative record. And to the extent Plaintiffs seek further documents regarding the denial of boarding foils prior to the issuance of the State Department's cable 25 STATE 73478 (request (6)), such documents do not involve any "pre-decisional documents that went into the creation of the policy." Dkt. 65-2, Exhibit A, at 5:24-6:02.

Plaintiffs have failed to demonstrate that the administrative record is incomplete. Under the well-settled principles of APA review, Plaintiffs cannot make the strong showing necessary to overcome the presumption of regularity. Plaintiffs' suggestions that there "manifest deficiencies" in the administrative record are unpersuasive. Pl.'s Br. at 4. Indeed, they only claim that six types of documents should be included in the administrative record. *See id.* at 3-4. And most have no relevance to the pre-decisional determinations made by DHS to deny derivative Plaintiffs with approved asylee petitions boarding foils.

Plaintiffs' claim that "Defendants' production excludes relevant materials that *they know* should be part of this [administrative record] given they have disclosed them in other pending cases." Pl.'s Br. at 1. But a certified administrative record is unique to a particular decision or circumstances. *See*, *e.g.*, *SourceAmerica*, 2018 WL 10436584, at *5 ("Courts have uniformly held that an administrative record need not include all documents in an agency's possession relating to the action under review; rather, the administrative record need only include documents that were relied upon by the relevant agency decisionmaker at the time of the decision."). Here, Plaintiffs challenge DHS's determination that derivative Plaintiffs are not asylees. As described further below, *Catholic Legal*, the case Plaintiffs cite to where the State Department submitted two additional cables in their administrative record, 25 STATE 113496 and 25 STATE 108252, had nothing to do with the issue in this case.

In *Catholic Legal*, plaintiffs challenge the State Departments issuance of immigrant visa and the State Department's application of the public charge inadmissibility ground, *see* 8 U.S.C. § 1182(a)(4). *See Catholic Legal Immigration Network, Inc. v. Rubio*, 1:26-cv-858, Dkt. 1, Complaint (S.D.N.Y. Feb. 2, 2026). Such challenge in *Catholic Legal* is clearly a broader challenge to what Plaintiffs bring here, which would explain why their administrative record is bigger than the one in this case. Even so, 25 STATE 113496 involved the State Department's application of the public charge ground and 25 STATE 108252 involved the pause of visas for Afghani nationals, both of which have *nothing* to do with issuance of *boarding foils* to Afghani nationals with approved asylee petitions. Simply put, these cables at issue in *Catholic Legal* were not relevant when a consular officer decided (as an agent of DHS) to apply the proclamation to Plaintiffs. Thus, because they were not considered by the decisionmaker in this case, they cannot be included in the administrative record.

Plaintiffs also that the certified administrative record must be incomplete because none "of the produced documents mention why Defendants now deviate from their 2017 policy determination that identical language in the 2017 travel ban exempted derivative asylees from the ban's effects." Pls' Br. at 7. This is a curious claim that is belied by the plain language of the Proclamations. Specifically, the 2017 Presidential Proclamation explicitly exempted individuals with boarding foils. *See* Presidential Proclamation 9645, "Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats," 82 Fed. Reg. 45161, 45167 (Sept. 24, 2017) (Section 3(b): "*Exceptions*. The suspension of entry pursuant to section 2 of his proclamation shall not apply to: . . . (iii) any foreign national who has a document other than a visa such as a transportation letter, an appropriate *boarding foil*, or an advance parole document valid on the applicable effective date under section 7 of this proclamation or issued on any date thereafter, that permits him or her to travel to the United States and seek entry or admission") (emphasis added). The Proclamation at issue here, Presidential Proclamations 10949 and 10998, do not. *See* 90 Fed. Reg. 59717 (Dec. 16, 2025); 90 Fed. Reg. 24497 (June 4, 2025).

Finally, Plaintiffs claim that the alleged deficiencies in the administrative record "ha[ve] a cascading effect on discovery in this case." Pls' Br. at 2. But what Plaintiffs seemingly ignore is that Defendants, in good faith, are planning to produce additional documents *outside the administrative record*. *See* Dkt. 65-5, PageID#624 (emphasis added); *see also* Dkt. 65-2, Exhibit A, at 5:24-6:02 (emphasis added) (Plaintiffs' counsel arguing that "the traditional scope" of an administrative record is "the *pre-decisional documents* that went into the *creation of the policy* [to deny aliens with approved asylee petitions boarding foils]"). Indeed, the very email Plaintiffs attach to their Motion demonstrates that Defendants informed Plaintiffs of their intention to

9

provide these additional documents *by May 1*. Dkt. 65-5, PageID#623. These additional documents include the twenty-eight (28) derivative Plaintiffs' alien files and an exemplar alien file of one of the principal Plaintiffs. *See id.* And Defendants provided a summary to Plaintiffs of what is included in those files. *See id.* Defendants also specifically stated additional documents from the Department of State would be forthcoming by May 1, 2026. *Id.* Any assertions by Plaintiffs that Defendants are "hiding the ball" and not acting in good faith are thus clearly erroneous.

Thus, this Court should deny Plaintiff's motion to compel.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion to Compel.

//

//

Dated: April 22, 2026

Respectfully submitted,

TODD BLANCHE
ACTING ATTORNEY GENERAL

By:        /s/
CHRISTIAN J. COOPER
Special Assistant United States Attorney
ELIZABETH SPAVINS
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3831
Fax:    (703) 299-3983
Email:  christian.cooper@usdoj.gov
        lizzie.spavins@usdoj.gov
*Counsel for Defendants*