N THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

AA, *et al.*,                                    )
                                                 )
                 Plaintiffs,                     )
                                                 )
v.                                               )        Civil Action No. 1:25-cv-01819 (AJT/WEF)
                                                 )
UNITED STATES DEPARTMENT OF                      )
STATE, *et al.*,                                 )
                                                 )
                 Defendants.                     )

## MEMORANDUM OPINION & ORDER

On October 21, 2025, seven families (collectively, Plaintiffs"), all native citizens of Afghanistan, and each with one person granted asylum status in the United States, filed this action claiming that the Presidential Proclamation 10949, which forbids the entry of Afghan nationals into the United States, violates the Fifth Amendment and Administrative Procedure Act ("APA") when applied to prevent the completion of the application process of their spouses' and children's already approved asylum applications. Before the Court is Defendants' Motion to Dismiss for Lack of Jurisdiction pursuant to Rule 12(b)(1) and for Failure to State a Claim pursuant to Rule 12(b)(6), or in the alternative, Motion to Transfer to the United States District Court for the District of Maryland. [Doc. No. 39]. The Court held a hearing on the Motion on May 6, 2026, following which it took the Motion under advisement. Upon consideration of the Motion, the memoranda in support thereof, [Doc. Nos. 40, 56] and in opposition thereto, [Doc. No. 51], the arguments of counsel at the hearing, and for the reasons stated below, the Motion is DENIED.

1

## I.    FACTUAL BACKGROUND

A.  <u>Presidential Proclamations 10949, 10998</u>

On January 20, 2025, the President issued Executive Order ("EO") 14161, titled "Protecting the United States from Foreign Terrorists and Other National Security and Public Safety Threats," in which he directed the Secretary of State and Attorney General to submit a report identifying countries "for which vetting and screening information is so deficient as to warrant a partial or full suspension on the admission of nationals from those countries pursuant to section 212(f) of the INA (8 U.S.C. 1182(f))." Exec. Order No. 14161, 90 Fed. Reg. 8451 (Jan. 20, 2025). After receiving such reports, the President issued Proclamation 10949, in which he invoked his authority under section 212(f) of the Immigration and Nationality Act (INA), 8 U.S.C. 1182(f), to suspend the entry of noncitizens into the United States from nineteen countries, including Afghanistan. Proclamation No. 10949, 90 Fed. Reg. 24497, 24499 (June 4, 2025).

On December 16, 2025, the President issued Proclamation 10998, which continued the suspension of the entry of noncitizens into the United States from Afghanistan and further suspended the entry of noncitizens into the United States from twenty additional countries as well as noncitizens applying using travel documents issued by the Palestine Authority. Proclamation No. 10998, 90 Fed. Reg. 59717, 59722–27 (Dec. 16, 2025). Centrally relevant here is that both proclamations state that they "shall not apply to an individual who has been granted asylum by the United States . . . [and] [n]othing in this proclamation shall be construed to limit the ability of an individual to seek asylum[.]" *See* Proclamation Nos. 10949, 10998, 90 Fed. Reg. at 24504, 59728.

B.  <u>Plaintiffs' Relevant Immigration History</u>

As alleged in the Complaint, Plaintiffs AA, BB, CC, DD, EE, FF, and GG (collectively "Principal Plaintiffs"), proceeding under pseudonyms, are natives and citizens of Afghanistan and

were granted asylum in the United States following the U.S. withdrawal from Afghanistan in 2021. [Doc. No. 1] ¶¶ 2–5, 18, 22, 35, 44, 56, 66, 74, 81. Since arriving in the United States, these individuals have found employment, productively integrated into United States society, applied for and, in some cases, obtained green cards, and begun rebuilding their lives with the expectation that their wives and children would soon join them through the follow-to-join pathway. *Id.* ¶ 6. The Principal Plaintiffs each filed the Form I-730, Refugee/Asylee Petition, on behalf of their children under the age of 21 and their spouses (collectively, "Derivative Plaintiffs"). *Id.* ¶¶ 157, 161, 164, 169, 176, 180, 183. USCIS approved all of the I-730 petitions at issue, following which it sent them to the National Visa Center for consular processing.[1] *Id.* ¶¶ 33, 42, 52, 64, 72, 79, 88

Derivative Plaintiffs AA, BB, CC, DD, and EE were each interviewed by a consular officer to determine their eligibility for a "boarding foil," a document that allows an individual to travel to the United States, FAM 203.5-6(a)(5), 203.5-15, following which they were informed that "a consular officer found you ineligible for an immigrant visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation [10949]" and "a National Interest Exception (NIE) will not be granted in your case." [Doc. No. 1] ¶¶ 159–60 (AA), 162–63 (BB), 166–68 (CC), 174–75 (DD), 177–79 (EE).[2] Derivative Plaintiffs FF and GG have neither been interviewed by a consular officer nor been denied a boarding foil. *Id.* ¶¶ 181–82, 184–85.

---

[1] When USCIS approves an I-730 petition but does not conduct overseas processing where the would-be beneficiary is located, it forwards the petition to the Department of State's National Visa Center ("NVC"). *See* USCIS, Policy Manual Vol. 4, Part C, Ch. 5, https://www.uscis.gov/policy-manual/volume-4-part-c-chapter-5 [https://perma.cc/5J5K-KRRX]; 9 FAM 203.5-4.

[2] In some cases, the Derivative Plaintiffs were informed before their interview took place that their boarding foil had been denied, [Doc. No. 1] ¶ 167, or were handed a pre-typed form on State Department letterhead, immediately following their interview, stating that their visas had been refused and their case placed into "administrative processing." *Id.* ¶ 178.

C.  The Claims

Plaintiffs filed this action on October 21, 2025, alleging that Defendants' application of Presidential Proclamation 10949 denying the Derivative Plaintiffs' travel authorization violates the United States Constitution and APA. [Doc. No. 1]. Plaintiffs bring four claims for relief: (1) that the denial of Derivative Plaintiffs' boarding foils is arbitrary and capricious under the APA because Derivative Plaintiffs are "asylees" (Claim One); (2) that application of Presidential Proclamation 10949 to Derivative Plaintiffs violates the *Accardi* doctrine and APA (Claim Two); (3) that Plaintiffs are entitled to benefits under the derivative asylum process, including the admission of eligible and admissible family members to the United States who have already been approved as derivative asylees by USCIS, and the deprivation of those benefits absent an individualized determination violates their procedural due process rights (Claim III); and (4) that Presidential Proclamation 10949 is unconstitutionally vague. *Id.* ¶¶ 193–226 (Claim Four).

## II.    STANDARD OF REVIEW

A.  Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges a court's jurisdiction over the subject matter of the suit. The motion may attack the court's subject matter jurisdiction either as a facial challenge by arguing that the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based," or as a factual challenge by arguing "that the jurisdictional allegations of the complaint are not true." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). Under the latter approach, this Court "may consider evidence outside the pleadings" to determine whether subject matter jurisdiction exists. *In re KBR, Inc.*, 744 F.3d 326, 333 (4th Cir. 2014) (citation omitted). The party asserting federal jurisdiction bears the burden of

establishing subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

    B.   Federal Rule of Civil Procedure 12(b)(6)

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. U.S.*, 30 F.3d 518, 522 (4th Cir. 1994). To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it contains factual allegations that permit a court to reasonably infer that the defendant is liable for the alleged misconduct. *Id*. Although a court must accept all factual allegations as true, the court need not "accept as true a legal conclusion couched as a factual allegation." *Id*. (quoting *Twombly*, 550 U.S. at 555).

    C.   Motion to Transfer Under 28 U.S.C. § 1404(a)

A district court may "[f]or the convenience of parties and witnesses, in the interest of justice . . . transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In exercising its discretion under the statute, the Court considers the following factors: "(1) the weight accorded the plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties, and (4) the interest of justice." *Trs. of the Plumbers and Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). The movant bears the burden of showing the propriety of transfer and must demonstrate that the "deference due plaintiffs' choice of venue is clearly outweighed by other factors." *Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc.*, 702 F. Supp. 1253, 1254, 1256 (E.D. Va. 1988) ("*Baylor*").

### III.    DISCUSSION

Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant to pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Alternatively, Defendants move to transfer this action to the United States District Court for the District of Maryland. [Doc. No. 39].

A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants argue that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) because (1) Plaintiffs lack Article III standing; and (2) the decision to issue or deny a boarding foil is within the discretion of the consular officer and therefore "committed to agency discretion by law" and unreviewable under the APA. [Doc. No. 40] at 11–16.

1.    Standing

Defendants argue that neither set of Plaintiffs can establish a cognizable injury-in-fact. Article III of the Constitution "confines the federal judicial power to the resolution of 'Cases' and 'Controversies,'" which requires the plaintiff in a case to demonstrate a "personal stake" in the case, or in other words "standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). To establish Article III standing, a plaintiff must show "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* "[T]he presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *Rumsfeld v. Forum for Academic & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2 (2006).

As to the first element, the injury in fact must be sufficiently "concrete"—meaning it must be "real, and not abstract." *TransUnion*, 594 U.S. at 424. Concrete injuries include "traditional tangible harms, such as physical harms and monetary harms," and "[v]arious intangible harms,"

including, not only those harms "specified by the Constitution itself," *id.* at 425, but other harms such as "a person's interest in being united with his relatives," can also constitute an injury for standing purposes. *Trump v. Hawaii*, 585 U.S. 667, 698 (2018). On a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct" suffice because courts "presume that general allegations embrace those specific facts that are necessary to support" a given claim. *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017)

As to the Derivative Plaintiffs, Defendants contend that because they are foreign nationals with no independent right to enter the U.S. or be issued a boarding foil, they have not suffered a cognizable "injury in fact." [Doc. No. 40] at 12. But Defendants put "the merits cart before the standing horse" by conflating the jurisdictional question of standing with a merits determination. *Cooksey v. Futrell*, 721 F.3d 226, 239 (4th Cir. 2013). Indeed, a determination on whether the Derivative Plaintiffs have any entitlement to be issued a boarding foil involves a finding on the merits that "has nothing to do with Article III standing." *Li v. Heller*, No. 23-CV-3025 (DLF), 2024 WL 3400111, at *3 (D.D.C. July 12, 2024); *Pourabdollah v. Blinken*, 2024 WL 474523, at *4 (D.D.C. Feb. 7, 2024) (holding that a visa applicant's "lack of a constitutional right to entry does not preclude Article III standing"). If anything, the Supreme Court's decision in *Department of State v. Muñoz*, 602 U.S. 899 (2024), which Defendants rely on extensively, "undermines the government's standing argument" because in reaching the merits of the case to conclude that a non-asylee spouse of a U.S. resident could not obtain a visa under the circumstances of that case, the Court implicitly rejected Defendants' argument that the case should be dismissed on jurisdictional grounds. *See Berenjian v. Blinken*, 2024 WL 3732451, at *2 (E.D. Va. Aug. 8, 2024) ("If Muñoz (or the Plaintiff here) lacked an injury, the Court would have been required to dismiss the case on jurisdictional grounds.").

Here, the Complaint alleges that the Derivative Plaintiffs have suffered various tangible and intangible harms, including the risk of "torture, degrading and inhumane treatment, or even death"; the "time, costs, and risks to attend an entirely futile interview"; harm to their "Fifth Amendment rights to due process"; and the denial of "family reunification," *See, e.g.*, [Doc. No.] ¶¶ 40, 187–92, 220. Such harms are "sufficient for standing under Article III." *See Hawaii*, 585 U.S. at 698 (recognizing "that a person's interest in being united with his relatives is sufficiently concrete and particularized to form the basis of an Article III injury in fact"); *Li*, 2024 WL 3400111, at *3 (finding plaintiff's separation from U.S. citizen fiance, which also caused financial hardship, as sufficient to establish injury in fact); *Pourabdollah*, 2024 WL 474523, at *4 (financial hardship qualifies as concrete harm for stnading).

Likewise, the Principal Plaintiffs in the United States have alleged their own injuries arising out of their separation from their immediate family members that remain in Afghanistan, as well as third-party standing given their "close relationship" with the Derivative Plaintiffs, their spouses or children, that face a "hindrance" in protecting their own interests due to their inability in travelling to the U.S. *See Sessions v. Morales-Santana*, 582 U.S. 47, 57 (2017) (recognizing that an individual has standing to bring an action on behalf of others when the individual (1) "has a close relationship" with someone else (2) facing "a hindrance" in protecting his or her own interests); *Payne-Barahona v. Gonzales*, 474 F.3d 1, 2 (1st Cir. 2007) (recognizing third party standing with parental relationship between parties and "some hindrance to the third party's ability to protect his or her own interest").

Defendants do not contest the causation and redressability prongs of the standing inquiry, and those too are easily met. No one disputes that but for the Presidential Proclamations, which the consular officers relied on in denying the boarding foil or declining to schedule a consular

interview, the Plaintiffs would have had their asylum applications fully processed. And a court order requiring the processing of the asylum applications is likely to redress Plaintiffs' injuries. Plaintiffs thus have established Article III standing to bring their claims.

2. Agency Discretion

Next, Defendants argue that the Court lacks jurisdiction to review Plaintiff's claims because they are "committed to agency discretion by law." [Doc. No. 40] at 13 (citing 5 U.S.C. § 701(a)(2)).

The APA "embodies a 'basic presumption of judicial review'" and "instructs reviewing courts to set aside agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Dep't of Commerce v. New York*, 588 U.S. 752, 771 (2019) (quoting U.S.C. § 706(2)(A)). The APA does not permit judicial review "'to the extent that' a relevant statute precludes it . . . or the agency action is 'committed to agency discretion by law.'" *Id.* (quoting 5 U.S.C. §§ 701(a)(1), (2)). "Agency action is committed to the agency's discretion when no judicially manageable standards are available to assess how and when an agency should exercise its discretion such that a court would have 'no law to apply.'" *Pharm. Coal. For Patient Access v. United States*, 126 F.4th 947, 964 (4th Cir. 2025) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830–31 (1985)). To determine whether the exception to the "basic presumption of judicial review" applies, courts ask (1) whether the kind of agency action at issue has "traditionally been committed to agency discretion," taking into account whether the action is "coercive" or more akin to an exercise of prosecutorial discretion; and (2) whether the relevant statutory provisions "intentionally limit[] the agency's discretion by setting guidelines or providing a limit." *See Holbrook v. Tennessee Valley Auth.*, 48 F.4th 282, 290 (4th Cir. 2022) (citing *Chaney*, 470 U.S. at 832).

Defendants argue that the decision to deny boarding foils is "committed to agency discretion by law" and thus judicially unreviewable under the *Holbrook* test. In that regard, Defendants contend that such a decision "involves an interest-balancing of factors that are within the agency's expertise" because the admission and exclusion of foreign nationals is largely an executive function and that there are no intentional statutory limits on the agency's decision. [Doc. No. 40] at 14–15. Plaintiffs, in opposition, argue that the *Holbrook* analysis weighs in favor of judicial reviewability because, in denying a boarding foils (and in some of the Plaintiffs' cases, withholding  a decision), the consular officers, whose actions are intentionally limited by Congress,  applied a "blanket ban to every Afghan derivative asylee without regard to individual circumstances or other considerations that would be a matter of discretion." [Doc. No. 51] at 10–13.

The State Department's blanket adoption of a policy to refuse travel documentation to all individuals affected by the Presidential Proclamations is reviewable under the APA. Although the Executive branch's authority on immigration matters necessarily allows consular officers to make certain discretionary decisions concerning immigration, *Hawaii*, 585 U.S. at 702, the Complaint alleges facts that make plausible Plaintiffs' claim that no individualized determination was ever made concerning the denial of the Derivative Plaintiffs' boarding foils. Instead, the Derivative Plaintiffs were denied boarding foils "pursuant to Presidential Proclamation [10949]," in some cases even before the interview with the consular officer took place. *See* [Doc. No. 1] ¶ 167. The denial of the Derivative Plaintiffs' boarding foils is therefore akin to "an agency's expression of a broad or general enforcement policy based on the agency's legal interpretation," which is not "committed to agency discretion by law" under § 701(a)(2). *CASA de Maryland v. Dep't of Homeland Sec.*, 924 F.3d 684, 699–701 (4th Cir. 2019) (concluding that Acting Secretary of

Homeland Security's decision to rescind the Deferred Action for Childhood Arrivals ("DACA") policy was judicially reviewable because "DACA's rescission involves a broad enforcement policy, not an individual decision").

Defendants contend that unlike the agency conduct in *CASA de Maryland*, the consular officers here engaged in discretionary decision making when they decided to deny or withhold a decision on the Derivative Plaintiffs' boarding foils in compliance with what they thought was required under a Presidential Proclamation; and in any event, the consular officers refusal to act was not "coercive" and therefore unreviewable under *Heckler v. Cheney* given that Plaintiffs do not have a constitutional liberty interest in the conferral of discretionary benefits. Neither contention is sufficient to eliminate the Court's jurisdiction to review the agency action at issue under the APA. In that regard, the APA "incorporates the traditional understanding of the judicial function, under which courts must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024). Here, the Court's judicial function clearly extends to reviewing an agency's interpretation of the Presidential Proclamations. *Casa de Maryland*, 924 F.3d at 701 n.13 ("An otherwise reviewable interpretation of a statute does not become presumptively unreviewable simply because the agency characterizes it as an exercise of enforcement discretion.") (quoting *NAACP v. Trump*, 298 F.Supp.3d 209, 231 (D.D.C. 2018)). Nor is there a lack of a "coercive" effect stemming from the Defendants' decision to prevent family unification after the approval of asylum applications simply because Plaintiffs do not have an independent constitutional right to family reunification.

As to the second *Holbrook* inquiry of whether "the statute intentionally limits the agency's discretion by setting guidelines or providing a limit," the State Department's guidelines for "V92 following-to-join asylees" provide that USCIS "has primary responsibility for Form I-730 petition

11

adjudications of following-to-join asylees," 9 FAM 203.5-3(a)(2), and "[c]onsular officers perform services on behalf of DHS/USCIS to facilitate V92 case processing abroad and to verify the eligibility of the approved beneficiaries, but not for adjudication of the Form I-730 petition." *Id.* 203.5-3(5). Indeed, the circumscribed purpose of the V92 interview is to (1) "[v]erify the beneficiary's identity"; (2) "[c]onfirm the qualifying relationship between the petitioner and beneficiary"; and (3) [d]etermine whether any bars to asylum exist, and if a bar does not apply, assess whether other derogatory information exists that would warrant a discretionary denial." *Id.* 203.5-7(a). And the guidelines provide a list of factors for the consular officer to consider when "requesting a discretionary denial," which the guidelines provide is "extremely rare" and is only "applicable when derogatory information in a case is egregious." *Id.* 203.5-9(12). If the consular officer finds that a V92 beneficiary is either subject to a bar to asylum, or warrants discretionary denial, they are required to send the case back to USCIS for additional processing. *Id.* 203.5-10. In sum, the State Department's own guidelines acknowledge the limited discretion consular officers have in approving boarding foils and provide meaningful standards for judicial review. For these reasons, Plaintiffs have "identified specific statutory standards against which to judge the Government's action underlying [their] claim, and [their] challenge is to a broad agency enforcement policy rather than to an individual decision." *See Doe v. Jaddou*, No. CV TDC-24-0650, 2024 WL 2057144 (D. Md. May 8, 2024). Therefore, Plaintiffs' claims are not "committed to agency discretion by law" and are judicially reviewable.

For the reasons discussed above, the Court DENIES Defendants' Motion to Dismiss on jurisdictional grounds pursuant FRCP 12(b)(1).

B. Motion to Dismiss for Failure to State a Claim.

Next, Defendants argue that the Complaint should be dismissed under Rule 12(b)(6) because it fails to state a claim upon which relief can be granted. Specifically, Defendants contend that (1) the Derivative Plaintiffs do not meet the asylum exception in the Presidential Proclamations; (2) the doctrine of consular non-reviewability precludes this Court from granting relief; (3) Plaintiffs have no cognizable liberty interest under the Constitution; and (4) the Presidential Proclamations 10949 and 10998 are not void for vagueness. [Doc. No. 40] at 16–26.

1. Asylum Exception

At the heart of this lawsuit is whether Plaintiffs' spouses and children fall under the exception to the Presidential Proclamations, which under their express terms, "shall not apply to an individual who has been granted asylum by the United States" or "limit the ability of an individual to seek asylum." *See* Proclamation Nos. 10949, 10998, 90 Fed. Reg. at 24504, 59728. Although neither the INA nor its implementing regulations define "asylee," Defendants point to the USCIS and State Department definitions of an "asylee," which defines asylees as noncitizens in the United States,[3] to argue that because the Derivative Plaintiffs are outside the country, they do not meet the asylee exception in Presidential Proclamations 10949 and 10998.[4] Plaintiffs, in opposition, argue that the Derivative Plaintiffs, who are outside the United States, have been

---

[3] USCIS defines "asylee" as:

> An alien in the United States or at a port of entry who is unable or unwilling to return to their country of nationality, or to seek the protection of that country because of persecution or a well-founded fear of persecution.

*See* USCIS, *Glossary Terms*, Asylee, https://www.uscis.gov/glossary-term/50691 [https://perma.cc/9ZDM-HD2Y]. The State Department defines an "asylee" as:

> [A] noncitizen in the United States who is found to be unable or unwilling to return to their country of nationality, or to seek the protection of that country because of persecution or a well-founded fear of persecution.

9 FAM 203.2-2.

[4] Defendants also rely on 8 U.S.C. § 1158(d)(5)(A)(i) and 8 C.F.R. §§ 208.21(c) as further support for their argument that the Derivative Plaintiffs are not "asylees" excepted from the Presidential Proclamations. [Doc. No. 40] at 18–13.

13

"granted asylum" or at a minimum are "seek[ing] asylum" and are therefore exempt from the Presidential Proclamations. [Doc. No. 51] at 23.

As discussed above, Derivative Plaintiffs have had their I-730 Refugee/Asylee Relative Petition approved by USCIS and are awaiting their eligibility determination of whether they can "travel to the U.S. as a family member of an individual granted asylee status." 9 FAM 203.5-2(a). Irrespective of whether Derivative Plaintiffs have been "granted asylum," which the Court need not decide for the purposes of its decision here, the Derivative Plaintiffs are clearly "seek[ing] asylum" such that they are excepted from the reach of the Presidential Proclamations.

    2.  Consular Non-reviewability

Next, Defendants argue that Plaintiffs cannot state a claim upon which relief can be granted because federal courts are barred from reviewing a denial of a boarding foil under the doctrine of consular non-reviewability. [Doc. No. 40] at 19–21. In opposition, Plaintiffs argue the doctrine of consular non-reviewability does not apply to the facts of this case because, unlike the cases Defendants cite, Plaintiffs are not challenging any discretionary and individualized decisions made by consular officials, but rather are opposing their application of the Proclamations' categorical ban. [Doc. No. 51] at 15. For the reasons discussed below, the doctrine of consular non-reviewability does not bar Plaintiffs' claims.

The doctrine of consular nonreviewability "instructs that ordinarily 'it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.'" *Sesay v. United States*, 984 F.3d 312, 315 (4th Cir. 2021) (quoting *U.S. ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950)). It is "well settled," however, that "challenges to the lawfulness of regulations or policies governing consular decisions"—as opposed to "particular" determinations by consular officers—are

reviewable. *Pietersen v. U.S. Dep't of State*, 138 F.4th 552, 560 (D.C. Cir. 2025); *see also Sunny v. Biden*, 573 F. Supp. 3d 759, 771 (E.D.N.Y. 2021) (holding that plaintiffs' challenge was not bared by doctrine of consular non-reviewability because it did "not seek to expedite individual cases or litigate a specific deferral [and instead] aims at enjoining a State Department policy that plaintiffs believe violates the INA and the Administrative Procedures Act").

Here, as discussed above with respect to whether Plaintiffs' claims are committed to agency discretion under the APA, Plaintiffs do not challenge any "discretionary decisions of the consular and embassy staff who are implementing it," but instead Defendants' blanket application of the Presidential Proclamations to Plaintiffs without any regard to their individualized circumstances. *Sunny*, 573 F. Supp. 3d at 771. Where, as here, no consular officer has made any discretionary decision, the doctrine of consular nonreviewability does not apply. *See Ameen v. U.S. Dep't of State*, 2024 WL 3416264, at *3 (E.D. Va. July 15, 2024) ("[T]he doctrine of consular non-reviewability applies only *once a consular officer has made a decision*." (emphasis added)).

### 3. Fifth Amendment Claim

Next, Defendants argue that Plaintiffs have failed to establish that Defendants violated any Fifth Amendment rights because they have not identified a cognizable liberty or property interest at stake. [Doc. No. 40] at 22–24.

The Fifth Amendment prohibits the government from depriving individuals of their "life, liberty, or property, without due process of law." U.S. CONST. amend. V. "A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz*, 598 U.S. 230, 236 (2023). Plaintiffs are entitled to procedural due process rights when nonconstitutional law, such as a statute

15

or regulation, creates "an expectation" that they would not be deprived of that kind of liberty without fair procedures. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

Defendants contend that the Supreme Court's decision in *Dep't of State v. Muñoz* prevents Plaintiffs from asserting a Fifth Amendment claim because they do not have a cognizable liberty interest. In *Muñoz*, a U.S. citizen brought a Fifth Amendment due process claim after her husband's visa application was denied under § 1182(a)(3)(A)(ii), which allows a consular officer to determine an individual is inadmissible if they have reason to believe that they have engaged in "unlawful activity." *Muñoz*, 602 U.S. at 902. The plaintiff argued that "even though visa denials are ordinarily unreviewable by courts" under the doctrine of consular nonreviewability, "the right to live with her noncitizen spouse in the United States is implicit in the 'liberty' protected by the Fifth Amendment" and the denial of her husband's visa without any explanation deprived her of her due process right. *Id.* at 903. Ruling against the plaintiff, the Supreme Court held that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country," stressing that the Constitution does not require prioritizing "the unity of the immigrant family." *Id.* at 910 (reasoning that "while Congress may show special solicitude to noncitizen spouses, such solicitude is 'a matter of legislative grace rather than fundamental right'").

The plaintiff in *Muñoz* claimed "an unenumerated constitutional right" in the "right to bring her noncitizen spouse to the United States" and the Supreme Court in *Muñoz* squarely focused on whether an individual has a "procedural due process right in *someone else's* legal proceeding" to provide an exception to the doctrine of consular nonreviewability. *Id.* at 916 (emphasis in original). In contrast, here, Plaintiffs claim a procedural due process right to have followed the detailed procedures of the asylum statute and its regulatory scheme, which allows for persons with asylum status, such as the Principal Plaintiffs, to seek asylum for their spouses and children. 8 U.S.C. §

16

1158(b)(3); 8 CFR § 208.21 (regulations for admission of the asylee's spouse and children); 9 FAM 203.5 (procedures for following-to-join asylees). Although Plaintiffs do not have a constitutional right to asylum, they "do have a due process interest in the procedures by which their asylum claims are adjudicated." *Black v. Almodovar*, 156 F.4th 171, 200 (2d Cir. 2025) (denying petition for rehearing en banc) (collecting cases); *Cham v. Att'y Gen. of U.S.*, 445 F.3d 683 (3d Cir. 2006) ("Although [petitioner] has no constitutional right to asylum, he was entitled, as a matter of due process, to a full and fair hearing on his application."). And unlike the plaintiff in *Muñoz*, who was asserting a liberty interest on behalf of her spouse, the Principal Plaintiffs here have their own entitlement and a "strong expectation" under the statutory and regulatory scheme to have the asylum claims of their family members fairly adjudicated. *See Kerry v. Din*, 576 U.S. 86, 98 (2015). Therefore, Plaintiffs have plausibly alleged a violation of their procedural due process rights.

### 4. Void for Vagueness Claim

Finally, Defendants argue that Plaintiffs' Void for Vagueness claim with respect to Presidential Proclamation 10949 should be dismissed because under the USCIS and State Department definitions of "asylee,'" *see supra* n.3, the Derivative Plaintiffs do not meet the definition of an "asylee"; and the Plaintiffs were given "clear notice" that their boarding foils were denied under the Presidential Proclamations and the President's authority under 8 U.S.C. § 1182(f); and as a result, the USCIS is not arbitrarily enforcing section 212(f) of the UNA, 8 U.S.C. § 1182(f). [Doc. No. 40] at 25–26.

The "requirement of clarity in regulation is essential to the protections provided by the Due Process Clause of the Fifth Amendment" and requires the "invalidation" of regulations that are "impermissibly vague" as applied to a given context. *FCC v. Fox Television Stations, Inc.*, 567

U.S. 239, 253, 258 (2012) ("[T]he Commission's standards as applied to these broadcasts were vague, and the Commission's orders must be set aside."). The "void for vagueness doctrine" addresses two interconnected due process concerns: "first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Id.* A party raising a facial challenge to a regulation on void-for-vagueness grounds need not show that the law is vague in all its applications. *Carolina Youth Action Project; D.S. by & through Ford v. Wilson*, 60 F.4th 770, 781–82 (4th Cir. 2023). Courts regularly apply the void-for-vagueness doctrine to executive orders. *See, e.g.*, *Perkins Coie LLP v. U.S. Dep't of Just.*, 783 F. Supp. 3d 105, 174–77 (D.D.C. 2025); *County of Santa Clara v. Trump*, 250 F. Supp. 3d 497, 534–36 (N.D. Cal. 2017).

Notwithstanding the definitions of "asylee," relied upon by Defendants, Presidential Proclamation 10949 does not provide any guidance with respect to its application to following-to-join asylees such as the Derivative Plaintiffs who have had their I-730 petitions approved and are in the process of "seeking asylum." Indeed, as alleged in the Complaint, Defendants took the position in 2017 that identical language in Proclamation 9645 (the 2017 travel ban) did not apply to following-to-join asylees. [Doc. No. 1] ¶¶ 133–35 & n.9.[5] For all these reasons, dismissal of Plaintiffs' void-for-vagueness claim is not warranted.

C. Motion to Transfer

As an alternative to their Motion to Dismiss, Defendants request that the case be transferred to the U.S. District Court for the District of Maryland. Defendants argue that Plaintiffs' choice of

---

[5] Defendants' contention that "Plaintiffs were provided clear notice that their requests for boarding foils were denied pursuant to 8 U.S.C. § 1182(f)" is also inconsistent with the Complaint's allegations. *See* [Doc. No. 1]. ¶ 167 (refusal letters stated that they were "ineligible for an immigrant visa"), and in any case is not a relevant inquiry on a void-for-vagueness claim, which looks at whether the proclamations themselves were vague, and not the denial letters provided to Plaintiffs.

18

venue, Virginia, should be afforded little weight given that only Principal Plaintiffs AA, EE, and FF currently reside in Virginia, while the others reside in Missouri (BB), Illinois (CC), Maryland (DD), and Michigan (GG). *See* [Doc. No. 1] ¶¶ 22, 35, 44, 56, 66, 74, 81. Defendants further argue that because Defendant USCIS's principal place of business is in Camp Springs, Maryland, transferring the case to Maryland would "serve the interests of justice and would permit the parties to litigate this case in a district with a more obvious connection to the underlying facts, claims, and issues in the case." [Doc. No. 40] at 9.

None of the factors under 28 U.S.C. § 1404(a) supports the transfer of this case to Maryland. First, that three of the seven Principal Plaintiffs live in this judicial district weighs in favor of keeping the case in their home forum of the Eastern District of Virginia. *See Baylor*, 702 F. Supp at 1257 (the "plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate," particularly where they have selected their home forum over a foreign forum).

Witness convenience, which "is not a significant factor" in cases seeking the review of agency action, *see Chenari v. U.S. Citizenship & Immigr. Servs.*, 2024 WL 895111, at *2 (D. Md. Mar. 1, 2024), similarly weighs against transfer. Although "the location of the administrative record carries some weight," which Defendants contend resides in Maryland, the State Department personnel that know most about the status of Plaintiffs' applications are clearly located outside the country and "not at USCIS headquarters in Maryland." *See Chakrabarti v. United States Citizenship & Immigr. Servs.*, No. CV 21-1945 PJM, 2021 WL 4458899, at *4 (D. Md. Sept. 29, 2021).

As to party convenience, three of the four institutional defendants, the State Department, the Department of Homeland Security, and USCIS are geographically closer to the Eastern District

19

of Virginia's Alexandria Division courthouse than they are to the District of Maryland's Greenbelt Division courthouse.[6] And, regardless, because the two divisions are less than 30 miles apart, "none of the parties can claim any significant inconvenience" from a case tried at any particular federal courthouse in the greater DC metropolitan area. *U.S. Ship Mgmt., Inc. v. Maersk Line, Ltd.*, 357 F. Supp. 2d 924, 937 (E.D. Va. 2005). Therefore, this factor also weighs against transfer. Finally, Defendants do not point to any other consideration, and the Court cannot identify any, under which the "interest of justice" would be served by transferring the case.

For these reasons, Defendants have failed to establish that transfer is appropriate.

### IV.    CONCLUSION

For the above reasons, it is hereby

**ORDERED** that the Motion be, and the same hereby is, DENIED.

May 28, 2026
Alexandria, Virginia

Anthony J. Trenga
United States District Judge

---

[6] The State Department is headquartered at 2201 C Street NW, Washington, D.C., and the Department of Homeland Security is headquartered at 245 Murray Lane SW, Washington, D.C. USCIS is headquartered at 5900 Capital Gateway Drive, Camp Springs, MD.