IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA,

ALEXANDRIA DIVISION

A.A., *et al.*,

Plaintiffs,

v.

UNITED STATES DEPARTMENT OF STATE, *et al.*,

Defendants.

Case No. 1:25-cv-01819 (AJT/WEF)

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs hereby submit this Memorandum in Support of their Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

**INTRODUCTION AND BACKGROUND**

Plaintiffs are Afghan asylees residing in the United States ("Asylee Plaintiffs") and their spouses and children in Afghanistan who hold approved petitions for derivative asylum status ("Derivative Plaintiffs"). This case concerns the U.S. Government's unlawful application of Presidential Proclamations 10949 and 10998 to bar Derivative Plaintiffs from joining Asylee Plaintiffs in the United States, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2), and the Fifth Amendment. Compl. ¶¶ 193–226.

On May 28, 2026, the Court denied Defendants' Motion to Dismiss or, In the Alternative, to Transfer Case. Mem. Op. at 20, ECF No. 103. The Court held that "the Derivative Plaintiffs are clearly 'seek[ing] asylum' such that they are excepted from the reach of the Presidential Proclamations," which explicitly exclude "individual[s] who have been granted asylum" or are "seek[ing] asylum." *Id.* at 13–14 (quoting Proclamation Nos. 10949, 10998).

Defendants have conceded that this ruling is case-dispositive. At a June 3, 2026 hearing, Defendants acknowledged that the "merits" of Plaintiffs' claims "have been determined" because the "Court has now ruled as a legal matter that the proclamations don't apply to [Plaintiffs]," and that "the only matter now is . . . [to] convert the [Motion to Dismiss] decision into a final appealable order, which is pro forma." June 3, 2026 Tr. at 2:21–3:6, ECF No. 108. Plaintiffs therefore proposed to Defendants that the parties submit a stipulated judgment with a reservation of appellate rights, but Defendants insist that their internal practice requires an adverse summary judgment ruling.

Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and enter an order granting their requested relief.

## STATEMENT OF UNDISPUTED FACTS

**A.      Follow-To-Join Derivative Asylum Process**

1.      Pursuant to Section 208 of the Immigration and Nationality Act ("INA"), individuals who have been granted asylum in the United States can seek asylum for their spouses and children based on their derivative relationship by filing a Form I-730 Refugee Asylee Relative Petition with U.S. Citizenship and Immigration Services ("USCIS"), a component of the Department of Homeland Security. 8 U.S.C. § 1158(b)(3)(A); 8 C.F.R. § 208.21(d).

2.      Once USCIS approves an I-730 Petition for a beneficiary located overseas in a location where there is no USCIS field office, USCIS forwards the approved petition to the State Department for a travel eligibility determination. USCIS Policy Manual, Vol. 4, Part C. Ch. 5.

3.      Upon receiving the approved I-730 Petition, the receiving embassy or consulate schedules an interview for the beneficiary. 9 FAM 203.5-6(b)(1). The beneficiary must generally complete a medical examination. 9 FAM 302.2-3(A)(d).

4.      The State Department's role is limited to conducting an individualized determination of a derivative asylee's eligibility to travel based on their identity, their qualifying relationship with the principal asylee, and any statutory bars or grounds of inadmissibility. 9 FAM 203.5-7.

5.      In other words, a derivative asylee is "eligible" to travel to the United States if they (1) can "establish their identity and a qualifying relationship with the asylee" and (2) are not "subject to any bars, or inadmissibilities, or reasons for denial of their case, unless such issues have been satisfactorily resolved." 9 FAM 203.5-2(a).

**B.      Defendants' Unlawful Policy and Implementing Procedures**

6.      On June 4, 2025, President Trump issued Proclamation 10949 titled "Restricting the Entry of Foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats." 90 Fed. Reg. 24497 (June 4, 2025). Proclamation 10949 fully suspends entry into the United States by nationals of twelve countries, including Afghanistan.

7.      Proclamation 10949 also states that it "shall not apply to an individual who has been granted asylum" and that it "shall [not] be construed to limit the ability of an individual to seek asylum." *Id.* at 24504.

8.      On June 6, 2025, the State Department issued guidance to all embassies and consulates about how to process *nonimmigrant visa and immigrant visa* applications affected by Proclamation 10949. Ex. A, 25 STATE 55146 (June 6, 2025). The guidance provided for the following procedures:

> i.  "[A]djudicators must first determine whether the applicant is otherwise eligible for a visa under the INA, without regard to [Proclamation 10949]." *Id.* at 5.

ii.  If the adjudicator finds that "the applicant is subject to [Proclamation 10949] and no exceptions apply, regardless of whether the applicant is determined to be ineligible on another basis, the officer must . . . [r]efuse the applicant [under] 212(f)." *Id.* at 6.

iii.  If an applicant subject to Proclamation 10949 is "determined to be ineligible on another basis, the officer must" refuse the applicant under both the applicable refusal code and Section 212(f). *Id.*

9.      On June 10, 2025, the State Department directed all embassies and consulates to "refuse all V92/V93 cases," the internal code for derivative asylees and refugees, respectively, "under 221(g)," the section of the INA that provides for temporary refusals when an application requires further administrative processing. Ex. B, "Visa Office" Email (June 10, 2025), at 2.

10.     Between June 10 and July 24, 2025, Defendants adopted a policy, ongoing to this day, that nationals of the countries listed in Proclamation 10949 who held approved I-730 Petitions were ineligible to receive boarding foils (the "Policy"). Ex. C, 25 STATE 73478 (July 24, 2025), at 1. On July 24, 2025, the State Department issued a cable to U.S. embassies and consulates with instructions for implementing the Policy. *Id.* at 1.

11.     Pursuant to the Policy, the State Department directed all embassies and consulates to "process all FTJ-A [follow-to-join asylum] beneficiaries who are nationals of the countries designated under [Proclamation] 10949 as per previous guidance" conveyed in the June 6, 2025 cable (25 STATE 55146). *Id.* at 2. The State Department further directed that, "[f]or any such FTJ-A beneficiary whose case was ready to issue but an adjudicator refused under INA 221(g) solely pending further guidance from [the State Department], the adjudicator should now overcome the

4

INA 221(g) refusal and refuse the applicant under INA 212(f)" per the June 6, 2025 cable (25 STATE 55146). *Id.*

12.    On December 16, 2025, President Trump issued Proclamation 10998, "Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States." 90 Fed. Reg. 59717 (Dec. 16, 2025). Proclamation 10998 continued the complete suspension of entry by nationals of Afghanistan.

13.    On December 17, 2025, the State Department reiterated to all consulates and embassies that "FTJ-A beneficiaries are subject to suspensions under 212(f)" pursuant to Proclamation 10998. Ex. D, Administrative Record, *Catholic Legal Immigration Network, Inc. v. Rubio*, No. 1:26-cv-858 (S.D.N.Y.) p. 23.

**C.    Defendants' Unlawful Refusals to Issue Boarding Foils to Derivative Plaintiffs**

14.    Asylee Plaintiffs were each paroled into the United States between October 2021 and March 2022 as part of Operation Allies Welcome and granted asylum between August 2023 and April 2024. Decls. of Asylee Plaintiffs, ECF Nos. 13-1–13-7. Each Asylee Plaintiff filed I-730 Refugee/Asylee Petitions on behalf of their spouses and minor children (the Derivative Plaintiffs in this action). *Id.*

15.    Between May 2024 and May 2025, USCIS approved I-730 Petitions filed on behalf of each of the Derivative Plaintiffs. Ex. E, Plaintiffs' I-730 Petitions; GG Decl. ¶ 10, ECF No. 13-7.

16.    Between June 13, 2025, and July 7, 2025, three of the Derivative Plaintiff families (AA, DD, and EE) were interviewed by the State Department for their boarding foils. Ex. F, Talbott Decl. ¶¶ 3–5 (Derivative Plaintiffs AA), ¶¶ 17–20 (Derivative Plaintiffs DD), ¶¶ 21–23 (Derivative Plaintiffs EE). These Derivative Plaintiffs arranged for and completed medical exams before their interviews. The State Department's Consular Consolidated Database (the "Database") reflects that

these Plaintiffs were refused boarding foils under INA Section 221(g).[1] Ex. F, Talbott Decl. ¶¶ 3–5 (Derivative Plaintiffs AA), ¶¶ 17–20 (Derivative Plaintiffs DD), ¶¶ 21–23 (Derivative Plaintiffs EE); *see also* Ex. B, Email from "The Visa Office" (June 10, 2025), at 2.

17.    Following the dissemination of the July 24, 2025 cable (25 STATE 73478), directing that that derivative asylees initially refused under Section 221(g) be converted to Section 212(f) refusals if their boarding foils were otherwise "ready to issue," the Database reflects that the boarding foil refusals for Derivative Plaintiff families AA, DD, and EE were converted from Section 221(g) to Section 212(f). Ex. F, Talbott Decl. ¶¶ 3–5 (Derivative Plaintiffs AA), ¶¶ 17–20 (Derivative Plaintiffs DD), ¶¶ 21–23 (Derivative Plaintiffs EE). This cable instruction applied only to beneficiaries that were "refused under INA 221(g) solely pending further guidance." Ex. C, 25 STATE 73478 (July 24, 2025), at 2. Because these Derivative Plaintiffs' refusals were converted from Section 221(g) to Section 212(f) pursuant to this instruction, the consular officers that interviewed Derivative Plaintiff families AA, DD, and EE necessarily must have determined that they were eligible to travel to the United States absent the Proclamation. Ex. C, 25 STATE 73478 (July 24, 2025), at 2.

18.    Derivative Plaintiff families BB and CC were interviewed by the State Department on July 28, 2025, and August 7, 2025, respectively. Ex. F, Talbott Decl. ¶¶ 6–12 (Derivative Plaintiffs BB), ¶¶ 13–16 (Derivative Plaintiffs CC). These Derivative Plaintiffs also arranged for and completed medical exams before their interviews. Pursuant to the State Department's

---

[1] Although the Database reflects that Derivative Plaintiff family DD was denied pursuant to Section 221(g), they received a letter on July 7, 2025 (filed as Exhibit H to the Complaint, ECF No. 2-8) from the U.S. embassy in Islamabad, Pakistan stating that they were found "ineligible for an immigrant visa under Section 212(f) of the Immigration and Nationality Act, pursuant to Presidential Proclamation 'Restricting the Entry of foreign Nationals to Protect the United States from Foreign Terrorists and Other National Security and Public Safety Threats.'" *See* Ex. G (Thoman Dec. ¶¶ 1–2).

procedures, these Plaintiffs first had their travel eligibility determined without regard to Proclamation 10949. *See* Ex. A, 25 STATE 55146 (June 6, 2025), at 5. Following those eligibility determinations, these Plaintiffs were refused boarding foils under INA Section 212(f) according to the Database. Ex. F, Talbott Decl. ¶¶ 6–12 (Derivative Plaintiffs BB), ¶¶ 13–16 (Derivative Plaintiffs CC); Ex. C, 25 STATE 73478 (July 24, 2025), at 2; Ex. A, 25 STATE 55146 (June 6, 2025), at 5–6.

19.    Derivative Plaintiff families BB and CC were determined to be "otherwise eligible" for boarding foils because they were denied only under Section 212(f) and not any additional ground of ineligibility, which State Department procedures applicable to derivative asylees at the time they were interviewed would have required consular officers to list in addition to Section 212(f), if they applied. *See* Ex. A, 25 STATE 55146 (June 6, 2025), at 6.

20.    All five Derivative Plaintiff families interviewed (AA, BB, CC, DD, and EE) were therefore denied solely on the basis of the Proclamation and for no other reason. Each were determined to be "ready to issue" or "otherwise eligible" absent the Proclamation. *See* Ex. F, Talbott Decl. ¶¶ 1–23; Ex. A, 25 STATE 55146 (June 6, 2025), at 5–6; Ex. C, 25 STATE 73478 (July 24, 2025), at 2.

21.    The FF and GG Derivative Plaintiff families have not yet been interviewed for their boarding foils, but Defendants' Policy dictates that they will be refused under Section 212(f) when their interviews are conducted.

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56, summary judgment is warranted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, "the non-moving party must come

forward with specific facts showing that there is a genuine issue of fact for trial." *Kitchen v. Upshaw*, 286 F.3d 179, 182 (4th Cir. 2002). Only disputes of material fact that might affect the outcome of the case properly prevent the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ARGUMENT

The material facts alleged in the Complaint are undisputed,[2] and the parties agree that the merits have been decided as a matter of law. *See* June 3, 2026 Tr. at 2:21–3:6, ECF No. 108. The Court has determined that Derivative Plaintiffs are, at minimum, "seek[ing] asylum" and therefore exempt from Proclamations 10949 and 10998. *See* Mem. Op. at 14, ECF No. 103. Therefore, judgment should enter for Plaintiffs.

I. **The Court Has Already Decided the Merits in Plaintiffs' Favor.**

A. **The Court's ruling that Derivative Plaintiffs are, at a minimum, "seeking asylum" is dispositive of Plaintiffs' Administrative Procedure Act claims.**

Plaintiffs are entitled to summary judgment because the Court has ruled that the Proclamations do not apply to Derivative Plaintiffs—a ruling that Defendants concede is case-dispositive. Even before the Court ruled on the Motion to Dismiss, Defendants consistently took the position that such a ruling would "end the case." May 15, 2026 Tr. at 12:20–25, ECF No. 100; *see also id.* at 19:15–18 ("[I]t's a legal question, as you indicated, whether the proclamation applies to these follow-to-join beneficiaries."). And after the Court concluded that Derivative Plaintiffs were "clearly 'seek[ing] asylum' such that they are excepted from the reach of the Presidential

---

[2] Pursuant to Federal Rule of Civil Procedure 12(a)(4)(A), Defendants' Answer was due on June 11, 2026 (fourteen days after the Court denied Defendants' Motion to Dismiss). Because Defendants failed to file an Answer by that date, the facts alleged in Plaintiffs' Complaint are deemed admitted. *See N. River Ins. Co. v. Stefanou*, 831 F.2d 484, 486 (4th Cir. 1987) ("The failure to deny an allegation in a pleading to which a responsive pleading is required constitutes an admission of that allegation.").

Proclamations," Mem. Op. at 14, ECF No. 103, Defendants again conceded that "[t]he merits have been determined," June 3, 2026 Tr. at 2:21–22, ECF No. 108. Because Derivative Plaintiffs are excepted from the Proclamations, it is undisputed that Plaintiffs have prevailed on their Administrative Procedure Act ("APA") claims and are entitled to relief.

      **B.**      **Plaintiffs would also prevail on their APA and constitutional claims for reasons independent of the Court's "seeking asylum" determination.**

Because Defendants concede that the Court's ruling that Derivative Plaintiffs are "seeking asylum" is dispositive, the Court need not reach Plaintiffs' alternative arguments—including that Derivative Plaintiffs received asylum status when USCIS granted their I-730 Petitions and that Defendants violated Asylee Plaintiffs' procedural due process rights.[3] These reasons independently merit relief, and Plaintiffs incorporate by reference the legal positions and arguments in their Complaint, ECF No. 1, and Memorandum in Opposition to Defendants' Motion to Dismiss, ECF No. 51. Plaintiffs expressly preserve all of these positions and arguments in the event that Defendants choose to appeal any final judgment.

**II.**      **Plaintiffs Are Entitled to the Relief Set Forth in Their Proposed Final Judgment.**

The Court should enter Plaintiffs' Proposed Final Judgment (Ex. H) to remedy Defendants' unlawful application of the Proclamations to derivative asylees and retain jurisdiction until all Derivative Plaintiffs have received individualized travel eligibility and border admissibility determinations and have arrived in the United States. Asylee Plaintiffs have been separated from their spouses and children for nearly five years—the last year because of what the Court has now

---

[3] Because an order regarding Plaintiffs' APA claim is sufficient to resolve the dispute, the Court need not reach Plaintiffs' constitutional claims and there is no "just reason for delay" of entry of judgment solely to resolve avoidable constitutional questions. *See* Fed. R. Civ. P. 54(b); *see also Dorcas Int'l Institute v. USCIS*, 2026 WL 1695954 (June 11, 2026).

ruled was an improper application of the Proclamations. Defendants' unlawful conduct—and the resulting separation of Plaintiffs' families—must end.

Specifically, Plaintiffs request that the Court: (1) vacate the unlawful Policy; (2) order issuance of boarding foils within seven days to the five Derivative Plaintiff families already interviewed and deemed "ready to issue" or "otherwise eligible" absent the ban (AA, BB, CC, DD, and EE); and (3) order that the State Department complete processing and render individualized travel determinations for Derivative Plaintiff families FF and GG to occur within fourteen days.

### A.      The Court should vacate Defendants' unlawful Policy.

Plaintiffs ask the Court to set aside Defendants' Policy of applying Proclamations 10949 and 10998 to derivative asylees. The APA "requires federal courts to set aside federal agency action that is not in accordance with law." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 300 (2003) (cleaned up) (quoting 5 U.S.C. § 706(2)(A)). Accordingly, "when a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Nat'l Min. Ass'n v. U.S. Army Corps of Eng'rs*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (cleaned up); *see Maryland v. United States Dep't of Agric.*, 770 F. Supp. 3d 779, 818 (D. Md. 2025) ("The ordinary remedy for unlawful agency actions is vacatur.").

The Court already has concluded that Defendants' application of the Proclamations to derivative asylees is unlawful. Despite conceding that the merits have been decided against them, Defendants continue to enforce this unlawful policy—and they will do so until ordered to stop. The Court therefore should enter final judgment vacating the Policy.

**B.**      **The Derivative Plaintiffs who were already interviewed should receive boarding foils within seven days of final judgment.**

Defendants' unlawful Policy has kept the already-interviewed Derivative Plaintiffs separated from their families for over a year. They should not be made to wait any longer. Defendants should issue boarding foils to these Derivative Plaintiff families (AA, BB, CC, DD, and EE) within seven days of entry of judgment. Immediate issuance is appropriate because these Derivative Plaintiffs already have been determined to be "ready to issue" or "otherwise eligible" and, absent Defendant's unlawful Policy, would have long had their boarding foils in hand.

With respect to Derivative Plaintiff families AA, DD, and EE, the fact that the State Department converted their refusals from Section 221(g) to Section 212(f) means that these Plaintiffs' boarding foils were "ready to issue," absent the Proclamation and refused "solely pending further guidance" regarding the Proclamation. Ex. C, 25 STATE 73478 (July 24, 2025), at 2; Ex. F, Talbott Decl. ¶¶ 3–5 (Derivative Plaintiffs AA), ¶¶ 17–20 (Derivative Plaintiffs DD), ¶¶ 21–23 (Derivative Plaintiffs EE). In other words, the consular officers that interviewed Derivative Plaintiff families AA, DD, and EE necessarily must have determined that they were otherwise eligible to travel to the United States. Ex. C, 25 STATE 73478 (July 24, 2025), at 2.

Moreover, at the time Derivative Plaintiff families BB and CC were interviewed, State Department procedures required consular officers to "first determine whether" they were "otherwise eligible for" boarding foils "without regard to" the Proclamation. Ex. A, 25 STATE 55146 (June 6, 2025), at 5. Only after making that determination could officers refuse to issue boarding foils under Section 212(f). *Id.* at 6. Further, if any other ineligibility applied, officers were required to list every applicable ineligibility—not just Section 212(f). *Id.* The State Department has confirmed that all interviewed Derivative Plaintiffs were refused only under Section 212(f) and no other ineligibility. Ex. F, Talbott Decl. ¶¶ 3–23. These Derivative Plaintiffs

were therefore deemed "otherwise eligible" and would have received their boarding foils had Defendants not unlawfully applied Proclamation 10949.

Defendants have indicated that they intend to require these Plaintiffs to repeat their medical examinations and security checks before further processing—on an unspecified timeline. Such requirements would be manifestly unjust. These Plaintiffs complied with all required steps as part of their prior interview process, and they were deemed "ready to issue" or "otherwise eligible." Defendants suggest these completed steps have now expired, but any lapse in time is only because of Defendants' unlawful conduct. The medical exams are conducted by certified third-party providers, none of which currently operate in Afghanistan. These Plaintiffs would therefore have to travel to a third country at significant time, expense, and physical danger to repeat their exams. And Defendants have provided no information about what other security checks must be redone or why they could not be done by Defendants on an expedited and concrete timeline.

If the Court is inclined to require that the already-interviewed Derivative Plaintiffs repeat their medical exams, it should order Defendants to allow them to do so within thirty days of their arrival in the United States. Precedent supports this approach. On August 12, 2021, the State Department and the Department of Homeland Security "jointly issued a blanket waiver of the requirement to undergo a medical exam before [immigrant visa] issuance or admission to the United States" for Afghan Special Immigrant Visa ("SIV") applicants. 9 FAM 302.2-3(A)(a)(1). Those applicants were instead required to "undergo a medical exam no later than 30 days after admission into the United States." 9 FAM 302.2-3(A)(a)(2). This recent precedent for Afghan nationals demonstrates that Defendants can—and do—waive the pre-arrival medical exam requirement when circumstances warrant. They should be ordered to do so here for Derivative Plaintiff families AA, BB, CC, DD, and EE.

Defendants should not be permitted to impose further delay and hardship on Plaintiffs as a consequence of Defendants' own unlawful conduct.

**C.      The remaining Derivative Plaintiffs should receive individualized travel determinations within fourteen days of final judgment.**

Derivative Plaintiff families FF and GG have also been harmed by Defendants' unlawful conduct. Although they have not yet been interviewed, they are entitled to an individualized travel eligibility determination without regard to the unlawful Policy.

For these Plaintiffs, the Proposed Final Judgment requires Defendants, within fourteen days of entry of judgment, to complete all security checks, facilitate the scheduling of medical examinations, conduct interviews, and render individualized travel eligibility determinations. As explained above, no certified medical exam providers currently operate in Afghanistan, so these families must travel to a third country to complete their exams. They should not be required to make that costly and dangerous journey only to wait indefinitely for their interview, either back in Afghanistan or in another country at considerable expense. A fourteen-day deadline ensures that Derivative Plaintiff families FF and GG can plan a single trip to complete their exams and attend their interviews without incurring the expense and risk of an extended stay abroad or a return trip. Again, these families should not be forced to bear the burden of yet more delay by Defendants.

**III.      The Court Should Retain Jurisdiction and Monitor to Ensure Compliance.**

Plaintiffs also request that the Court (1) retain jurisdiction until all Derivative Plaintiffs have received individualized travel eligibility and border admissibility determinations and arrive in the United States, and (2) require Defendants to file weekly status reports on their compliance with the final judgment. Courts "routinely retain jurisdiction to enforce their own judgments," *Aisenberg v. Reliance Standard Life Ins. Co.*, 734 F. Supp. 3d 489, 496 (E.D. Va. 2024), because "[w]ithout jurisdiction to enforce a judgment entered by a federal court, the judicial power would

13

be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution," *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (citation and internal quotation marks omitted).

Although the facts are undisputed and Defendants concede the Court has ruled in Plaintiffs' favor on the case-dispositive legal question, it is clear Defendants will not take steps to redress their unlawful conduct without Court intervention and oversight. Asylee Plaintiffs have been separated from their spouses and children for nearly five years, and just when it was finally time for Derivative Plaintiffs to join them in the United States, Defendants' unlawful Policy misapplying the Proclamations prevented them from doing so. Judicial monitoring is necessary to ensure Plaintiffs promptly obtain the relief to which they are entitled. Plaintiffs are committed to cooperating with Defendants to meet the deadlines in the Proposed Final Judgment.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their Motion for Summary Judgment and enter judgment in their favor on their APA claims, ordering the relief set forth in Plaintiffs' Proposed Final Judgment.

Dated: June 17, 2026

Respectfully submitted,

*/s/ Ryan Scarborough*

Ryan T. Scarborough (VSB No. 43170)
William P. Ashworth (*pro hac vice*)
Lori J. Interlicchio (*pro hac vice*)
Danielle J. Barondess (*pro hac vice*)
Julian Yigal Kritz (*pro hac vice*)
Lindsay P. Hannibal (VSB No. 97008)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
rscarborough@wc.com
washworth@wc.com
linterlicchio@wc.com
dbarondess@wc.com
jkritz@wc.com
lhannibal@wc.com

Ghita Schwarz (*pro hac vice*)
Guadalupe Aguirre (*pro hac vice*)
Pedro Sepulveda (*pro hac vice*)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, NY 10004
Telephone: (516) 838-1655
gschwarz@refugeerights.org
laguirre@refugeerights.org
psepulveda@refugeerights.org

*Counsel for Plaintiffs*