**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| A.A., *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-1819 (AJT/WEF) |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT</u>**

## INTRODUCTION AND BACKGROUND

On October 21, 2025, seven families (collectively, Plaintiffs), all natives and citizens of Afghanistan, and each with one person granted asylum status in the United States (hereinafter, the "principal Plaintiffs"), filed this action claiming the application of Presidential Proclamation 10949, which forbids the entry of Afghan nationals into the United States, violates the Fifth Amendment and Administrative Procedure Act ("APA"). Plaintiffs claim that because U.S. Citizenship and Immigration Services ("USCIS") granted the principal Plaintiffs' Form I-730s, Refugee/Asylee Relative Petitions, the remaining family members (hereinafter, the "derivative Plaintiffs"), who are all outside the United States, are nevertheless exempted from being denied entry pursuant to Presidential Proclamation 10949 and section 212(f) of the Immigration and Nationality Act ("INA"). Defendants moved to dismiss or in the alternative to transfer on numerous grounds, which the Court denied on May 28, 2026. (Dkt. 103). In doing so, the Court concluded that "[i]rrespective of whether Derivative Plaintiffs have been 'granted asylum,' which the Court need not decide for the purposes of its decision here, the Derivative Plaintiffs are clearly 'seek[ing] asylum' such that they are excepted from the reach of the Presidential Proclamations." Dkt. 103 at 14.

Because the Court had resolved the merits of Plaintiff's claims as to the application of the Presidential Proclamations, the parties discussed the possibility of resolving the case by, *inter alia*, concluding the district court proceedings expeditiously and obtaining a final resolution from the Fourth Circuit.[1] Accordingly, Plaintiffs moved for summary judgment on June 17, 2026 (Dkt. 111). For the reasons set forth in Defendants' motion to dismiss (Dkt. 39, 40, 56), Defendants maintain that judgment should be entered in their favor, and thus oppose Plaintiffs' motion for summary

---

[1] Defendants may wish to appeal the District Court's decision denying Defendant's motion to dismiss and concluding that the Derivative Plaintiffs are excepted from the Presidential Proclamations.

judgment and file their own cross motion for summary judgment. *See infra* Part I. But should the Court enter judgment against the Defendants, the relief Plaintiffs request is improper and should not be granted, for the reasons stated below, *infra* Part II.

**RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

In their brief, Defendants' state twenty-one (21) alleged undisputed facts. *See* Doc. No. 111, at 2-7. Defendants do not dispute these facts, and ask this Court to incorporate those Statement of Undisputed Material Facts as Defendants' as well.

**ARGUMENT**

**I.      Summary Judgment Should Be Entered in the Defendants' Favor**

A court may grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). After the movant meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up). Only disputes of material fact that might affect the outcome of the case properly prevent the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In determining whether there is a genuine issue for trial, a court must draw all justifiable inferences in the non-moving party's favor. *Anderson*, 477 U.S. at 255. However, "permissible inferences must still be within the range of reasonable probability." *Lovelace v. Sherwin-Williams Co.*, 681 F.2d 230, 241 (4th Cir. 1982) (cleaned up). A court must "withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and

2

conjecture." *Id.* Summary judgment is therefore warranted when any decision in favor of the non-moving party "would necessarily be based on speculation and conjecture." *Myrick v. Prime Ins. Syndicate, Inc*., 395 F.3d 485, 489 (4th Cir. 2005).

Defendants recognize that the Court has already resolved the legal issue in this case against them by holding that "[i]rrespective of whether Derivative Plaintiffs have been 'granted asylum,' which the Court need not decide for the purposes of its decision here, the Derivative Plaintiffs are clearly 'seek[ing] asylum' such that they are excepted from the reach of the Presidential Proclamations." Dkt. 103 at 14; *see also id.* at 13 ("At the heart of this lawsuit is whether Plaintiffs' spouses and children fall under the exception to the Presidential Proclamations, which under their express terms, 'shall not apply to an individual who has been granted asylum by the United States' or 'limit the ability of an individual to seek asylum.' *See* Proclamation Nos. 10949, 10998, 90 Fed. Reg. at 24504, 59728."). Defendants also acknowledge that there are no disputed material facts that would necessitate a trial.

Defendants nevertheless maintain that entry of judgment in their favor is appropriate, for the reasons set forth in their motion to dismiss (Dkt. 39, 40, 56). As set forth in Defendants' motion to dismiss, the Court lacks jurisdiction over Plaintiffs' claims, *see* Dkt. 40 at 11-16. In addition, Plaintiffs do *not* meet the exceptions in Presidential Proclamations 10949 and 10998. *See* Dkt. 40 at 16-19; Dkt. 56 at 7-12. Accordingly, summary judgment should be granted to the Defendants.

## II.    Plaintiffs are Not Entitled to the Specific Relief They Request.

In the event this Court were to rule in favor of Plaintiffs on the merits of this action, the specific relief Plaintiffs request should not be granted. Plaintiffs request three separate remedies here: "(1) vacate the unlawful Policy; (2) order issuance of boarding foils within seven days to the

3

five Derivative Plaintiff families already interviewed and deemed "ready to issue" or "otherwise eligible" absent the ban (AA, BB, CC, DD, and EE); and (3) order that the State Department complete processing and render individualized travel determinations for Derivative Plaintiff families FF and GG to occur within fourteen days." Pl.'s Br. at 10.  For the reasons below, this Court should deny Plaintiffs' requested relief.

*First*, if this Court were to agree with Plaintiffs on the merits, this Court should only vacate the alleged policy as applied to Plaintiffs. Plaintiffs are not just asking Defendants' legal interpretation to be set aside as to them only, but to *all aliens with approved asylee relative petitions*. *See* Pl.'s Br. at 10. Plaintiffs' Complaint does not ask for such relief. *See generally*, Compl. As Plaintiffs made clear, "this action challenges Defendants' unlawful *application* of Presidential Proclamation 10949." *Id*. ¶ 1 (emphasis added). Therefore, any vacatur should be made as applied to the Plaintiffs.

*Second*, this Court cannot compel a consular officer to issue boarding foils within 7 days or make individualized travel determinations within 14 days. Plaintiffs ask this Court to order a consular officer to issue boarding foils to Plaintiffs who were already interviewed and denied a boarding foil pursuant to 8 U.S.C. § 1182(f). Pl.'s Br. at 11-13. Plaintiffs contend "[i]mmediate issuance [of boarding foils] is appropriate because these Derivative Plaintiffs already have been determined to be "ready to issue" or "otherwise eligible" and, absent Defendant's unlawful Policy, would have long had their boarding foils in hand." *Id.* at 11. Plaintiffs who have yet to be interviewed on their applications also seek an individualized determination as to their eligibility for a boarding foil with 14 days of final judgment. *See id.* at 13. Plaintiffs ask such judgment by this Court to require Defendants "complete all security checks, facilitate the scheduling of medical examinations, conduct interviews, and render individualized travel eligibility determinations." *Id.*

4

As an initial matter, Plaintiffs' Complaint *failed* to bring forth any claims to compel agency action. *See* Compl. ¶¶ 193-226 (Claims for relief). This is especially important for derivative Plaintiffs FF and GG. They *never* had the policy applied to them as they were never interviewed by a consular officer. And what Plaintiffs ask for is an interview and an individualized determination of Plaintiffs' eligibility for a boarding foil within 14 days of a final judgment. Pl.'s Br. at 13. They are seeking to compel agency action. As other jurists have in this Court made clear, Plaintiffs cannot amend their Complaint through briefing. *See Gebregzhiaber v. Donis*, 2026 WL 510419, at *2 (E.D. Va. Feb. 24, 2026) (Giles, J.) (citing *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013)); *Gebremedhin v. Gentry*, 2025 WL 1139115, at *2 (E.D. Va. Apr. 17, 2025) (Hilton, J.) (same).

Additionally, Defendants emphasize that Plaintiffs must be treated like all other applicants seeking boarding foils, with each application adjudicated individually under standard processing protocols.  Many of these protocols involve steps within the applicant's control and for which DOS and DHS cannot provide reasonable time estimates.  For instance, applicants require updated medical exams, which carry a maximum validity of 6 months—a period established by the Centers for Disease Control and Prevention (CDC) based on tuberculosis (TB) screening requirements. *See* 9 FAM 302.2-3(C). If the examination expires before the applicant travels, the medical examination must generally be repeated in full.  *See id*. The applicant bears the burden of scheduling or obtaining a medical exam, and of any medical treatment that may be required prior to traveling to the United States. For these reasons, this timing component is outside of the Department of State's control. *See generally* 9 FAM 203.5-11. Furthermore, all applicants must also clear the required security checks and be otherwise eligible for issuance.  *See* 9 FAM 203.5-17. Accordingly, Defendants propose that after the Court enters final judgment, Defendants

5

provide updates to Plaintiffs' counsel every 60 days regarding the status of the applications.

Plaintiffs argue that repeat medical exams and security checks would be unfair, and asks that if the Court does allow medical exams, that it do so under FAM guidance that previously permitted Afghan Special Immigrant Visa ("SIV") holders to complete their medicals within 30 days of US entry. Pl.'s Br. at 12. This argument is misleading and ignores that the FAM guidance and procedures Plaintiffs cite were based on statutory authority in section 402 of the 2021 Emergency Security Supplemental Appropriations Act ("ESSAA"). *See* Pub. L. 117-31, 135 Stat. 309 (July 30, 2021). The medical waiver was specific to Afghan SIVs and contained a sunset date that has now passed, *see* ESSA § 402(g) ("[T]he authority [to waive medical examinations] expires on the date that is 3 years after the date of enactment of this Act."). The Department of State would need express statutory authority to pursue such a process again for these or any other class of applicant.

More fundamentally, the equitable requested relief by the Plaintiffs would be in direct contradiction with the Executive Branch's power over the admission and exclusion of aliens. "For more than a century, [the] [Supreme] Court has recognized that the admission and exclusion of foreign nationals is a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control." *Department of State v. Muñoz*, 602 U.S. 899, 906 (2024) (internal citations and quotations omitted); *see Harisiades v. Shaughnessy*, 342 U.S. 580, 588–589 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations [and] the war power."). Indeed, "[a] principal feature of immigration law is protecting Executive discretion." *Gonzalez v. Cuccinelli*, 985 F.3d 357, 366-67 (4th Cir. 2021) (citing *Trump v. Hawaii*, 585 U.S. 667, 701-02 (2018); *Arizona v. United States*, 567 U.S. 387, 396 (2012); *I.N.S. v. Aguirre-Aguirre*, 526 U.S.

6

415, 425 (1999); *Reno v. Am.–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 486–87 (1999)).

Before any alien is allowed to enter the United States, a consular officer must ensure the applicant is not inadmissible under the INA. *See* 8 U.S.C. § 1361; 8 C.F.R. § 214.1(a)(3); *see also* 8 U.S.C. § 1182(a) (inadmissibility grounds); *Kerry v. Din*, 576 U.S. 86, 89 (2015). Regardless of when prior eligibility determinations were made, the Executive Branch, through a consular officer, still must independently assess, at the time of issuance, whether each applicant remains admissible under the INA. *See id.*

In *Muñoz*, the Supreme Court recognized "the longstanding principle that the U.S. can, as a matter of public policy . . . forbid aliens or classes of aliens from coming within its borders, and no limits can be put by the courts upon that power." 602 U.S. at 915 (quoting *Wong Wing*, 163 U.S. 228 at 237) (cleaned up). What Plaintiffs request is a court order that would effectively compel issuance of boarding foils before a consular officer has determined that each Plaintiff is admissible—precisely the kind of judicial interference with Executive authority that *Muñoz* forecloses. *See* Pl.'s Br. at 12-13. This relief would be a blatant violation of Executive Branch's sole authority to admit and exclude aliens. *See, e.g.*, *Muñoz*, 602 U.S. at 906; *Trump*, 585 U.S. at 701-02; *Arizona*, 567 U.S. at 396; *Aguirre-Aguirre*, 526 U.S. at 425 (1999); *Reno*, 525 U.S. at 486–87.

*Finally*, if this Court were to grant Plaintiffs requested relief, "[it] would create an *untenable precedent* and open the door to endless applicants similarly seeking to skip the line." *Gebregzhiaber*, 2026 WL 510419, at \*5 (emphasis added). To compel a consular officer to act would prejudice other applicants of other aliens seeking boarding foils. *See Belay v. Donis*, 799 F. Supp. 3d 493, 506 (E.D. Va. 2025) (Alston, J.) (in the context of asylum applications); *see Gebremedhin*, 2025 WL 1139115, at \*4 (same); *see also Liu v. USCIS*, 2024 WL 4436232, at \*3

7

(E.D.N.Y. Oct. 7, 2024) ("Ordering the agency to place plaintiff 'at the head of the queue' while 'mov[ing] all others back one space,' could thus delay the adjudication of longer-pending applications that present comparable interests."). This Court cannot require a consular officer to issue boarding foils, nor should it require that that a consular officer adjudicate Plaintiffs' applications for boarding foils within a specific timeframe, especially in light of the aforementioned required checks.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court grant summary judgment in their favor and deny Plaintiffs' motion for summary judgment.  In the alternative, if the Court enters final judgment adverse to Defendants, Defendants respectfully request that any relief be limited to the individual Plaintiffs in this action and to a holding that Plaintiffs be considered for boarding foils without regarding to the Presidential Proclamations.

//

//

Dated: July 2, 2026                                     Respectfully submitted,

                                                         TODD W. BLANCHE
                                                         ACTING ATTORNEY GENERAL

                                        *By*:  _____/s/_____
                                                         CHRISTIAN J. COOPER
                                                         Special Assistant United States Attorney
                                                         ELIZABETH A. SPAVINS
                                                         Assistant United States Attorney
                                                         Office of the United States Attorney
                                                         Justin W. Williams U.S. Attorney's Building
                                                         2100 Jamieson Avenue
                                                         Alexandria, Virginia 22314
                                                         Tel:   (703) 299-3831
                                                         Fax:   (703) 299-3983
                                                         Email: christian.cooper@usdoj.gov
                                                                lizzie.spavins@usdoj.gov

8

*Counsel for Defendants*