**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| A.A., *et al.*, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-1819 (AJT/WEF) |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE, *et al.*, | ) ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

**DEFENDANTS' MOTION TO STAY COURT'S JULY 29, 2026, JUDGMENT AND ORDER PENDING APPEAL AND FOR IMMEDIATE ADMINISTRATIVE STAY**

Defendants, U.S. Department of State, *et al.*, move to stay pending appeal the Court's July 29, 2026, Order, Doc. No. 128, and Judgment, Doc. No. 129, granting summary judgment for Plaintiffs. Defendants also move to immediately administratively stay the Order pending the Court's ruling on the motion to stay pending appeal. In the alternative, Defendants request a stay pending appeal of the aspects of the Order that impose universal vacatur and that extend relief beyond the parties to this case.

**INTRODUCTION**

This Court's July 29 Order (i) universally vacated Defendants' application of the entry bars in Presidential Proclamation 10949 and 10998 to derivative asylee applicants, and (ii) required Defendants to issue boarding foils to 21 derivative Plaintiffs whose applications were already denied by a United States consular officer pursuant to 8 U.S.C. § 1182(f) and Proclamation 10949. Defendants have now appealed the Court's Order and Judgment. *See* Doc. No. 136. Defendants respectfully request that this Court (i) stay its Order and Judgment pending appeal, and (ii) issue an immediate administrative stay of the Order and Judgment while it considers the motion to stay

pending appeal. In the alternative, the Defendants respectfully request the Court stay those aspects of the Order and Judgment that impose universal vacatur—to the extent this Court's Order extends beyond the named Plaintiffs, it by definition causes no harm to the Plaintiffs yet at the same time causes extraordinary harm to the United States and the balance of equities compels that those aspects of the Order be stayed pending appeal.

Defendants are likely to succeed on appeal. *First*, and most critically, the relief the Court granted violated the consular non-reviewability doctrine, which prohibits courts from (i) reviewing consular decisions denying entry and (ii) ordering a consular officer to admit any particular alien. *Second*, Defendants correctly determined that Plaintiffs were barred by the Proclamations and do not qualify for any asylum exception. *Third*, Plaintiffs' procedural due process claim is legally infirm because principal Plaintiffs lack a protected liberty interest in the applications of derivative Plaintiffs. And even if principal Plaintiffs had a direct interest in the applications, they never identified what process was lacking. *Fourth*, Plaintiffs' claims suffered from numerous other defects; they lacked standing, their Administrative Procedure Act ("APA") claims were not reviewable, and the void-for-vagueness doctrine was not implicated by the Proclamation. *Fifth*, the Court granted overbroad relief by ordering universal vacatur of Defendants' application of the Proclamation to derivative asylee applicants. Universal vacatur clashes with the Supreme Court's universal-injunction bar, *see Trump v. CASA*, 606 U.S. 831, 856 (2025), and is not authorized by the APA.

Defendants will be irreparably harmed absent a stay. Once a boarding foil issues and the derivative Plaintiffs are admitted to the country, Defendants will be unable to remove them even if Defendants are successful on appeal. The Court's attempt to impose a universal "vacatur" that purports to extend this same result to *all* derivative asylee applicants around the world by

2

prohibiting Defendants from applying the Proclamations to them is fundamentally at odds with the APA and principles of Article III. An appeal will take time and the damage inflicted on the Executive and the public by the Order cannot be undone.

Lastly, an immediate administrative stay is warranted to preserve the status quo until the Court can rule on Defendants' motion to stay pending appeal. The administrative stay need only last until the Court decides the stay-pending-appeal motion, and the irreparable harm Defendants would experience far outweighs any burden Plaintiffs might experience by having to wait a little longer.

For these reasons, and the reasons stated below, the Defendants respectfully request this Court grant their motion.

## **BACKGROUND**

The "principal Plaintiffs," who are asylees in the United States, filed I-730 asylee petitions on behalf of their spouses and children abroad, the "derivative Plaintiffs." *See* Doc. No. 1 ("Compl.") ¶¶ 18, 22, 35, 44, 56, 66, 74, 81, 157, 161, 164, 169, 176, 180, 183. Derivative Plaintiffs AA, BB, CC, DD, and EE, were interviewed by a consular officer to determine their eligibility for a boarding foil. *Id.* ¶¶ 159 (AA), 162 (BB), 166 (CC), 171 (DD), 177 (EE). The derivative Plaintiffs AA, BB, CC, DD, and EE, had their applications for boarding foils refused under sections 212(f) and 221(g) of the INA, 8 U.S.C. §§ 1182(f), 1201(g), pursuant to Presidential Proclamation 10949. *Id.* ¶¶ 160 (AA), 163 (BB), 168 (CC), 174-75 (DD), 179 (EE). A consular officer also informed derivative Plaintiffs AA, BB, CC, DD, and EE, that they would not receive a national interest exception to the proclamation. *Id.* According to the Complaint, the spouses and children of Plaintiffs FF and GG have neither been interviewed by a consular officer nor denied a boarding foil. *Id.* ¶¶ 181-82, 184-85.

Plaintiffs sued, claiming Defendants' application of Presidential Proclamation 10949 denying derivative Plaintiffs boarding foils violates the Constitution and APA. *See generally*, Compl. Plaintiffs bring four claims for relief. Compl. ¶¶ 193-226. *First*, Plaintiffs claim that the Defendants' decisions to deny derivative Plaintiffs boarding foils is arbitrary and capricious under the APA because derivative Plaintiffs are considered "asylees." *Id.* ¶¶ 193-210 (Claim One). *Second*, Plaintiffs claim that application of Presidential Proclamation 10949 to derivative asylees violates the *Accardi* doctrine and APA. *Id.* ¶¶ 211-215 (Claim Two). *Third*, Plaintiffs claim that they have an entitlement to asylum benefits and the denial of entry into the United States violates that entitlement under the Fifth Amendment's due process clause. *Id.* ¶¶ 216-221 (Claim Three). And *fourth*, Plaintiffs claim that Presidential Proclamation 10949 is unconstitutionally vague. *Id.* ¶¶ 222-226 (Claim Four).

Defendants moved to dismiss on numerous grounds, which the Court denied. *AA v. U.S. Dep't of State*, 2026 WL 1498079 (E.D. Va. May 28, 2026) (Trenga, J.); Doc. No. 103. In doing so, the Court concluded that "[i]rrespective of whether Derivative Plaintiffs have been 'granted asylum,' which the Court need not decide for the purposes of its decision here, the Derivative Plaintiffs are clearly 'seek[ing] asylum' such that they are excepted from the reach of the Presidential Proclamations." *AA*, 2026 WL 1498079, at *6.

The parties then filed cross-motions for summary judgment. The Court denied Defendants' summary judgment motion and granted summary judgment in favor of Plaintiffs. Doc. No. 128, 129. The Court ordered that: (1) "the State Department's policy applying Presidential Proclamations 10949 and 10998 to follow-to-join asylees as used to deny boarding foils, be and the same hereby is, **VACATED** as unlawful under 5 U.S.C. § 706(2)(A)"; (2) Defendants issue the boarding foils for Derivative Plaintiffs AA, BB, CC, DD, EE within 15 days of the Court's

4

Order …"; and (3) "Defendants adjudicate the boarding foil applications of Plaintiffs FF and GG individually and without regard to Presidential Proclamations 10949 and 10998, within 30 days of the date of this Order." Order at 1-2.

**ARGUMENT**

**I.    A Stay Pending Appeal is Warranted.**

A party seeking a stay pending appeal must show: "(1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." *Miller v. Brown*, 465 F. Supp. 2d 584, 596 (E.D. Va. 2006) (quoting *Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970)). "Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987)).

**A. Defendants are likely to succeed on the merits of their appeal.**

*1. Plaintiffs' APA claims are not reviewable.*

The decision to issue or deny an alien a boarding foil is within the discretion of a consular officer. *See* 9 FAM 203.5-3 ("Consular officers perform services on behalf of DHS/USCIS to facilitate V92 case processing abroad and to verify the eligibility of the approved beneficiaries"). Because such decisions are committed to agency discretion by law, and there are no judicially manageable standards to review the agency's exercise of discretion, Plaintiffs' APA claims are unreviewable. *See* 5 U.S.C. § 701(a)(2); *Pharm. Coal. For Patient Access v. United States*, 126 F.4th 947, 964 (4th Cir. 2025) ("Agency action is committed to the agency's discretion when no judicially manageable standards are available to assess how and when an agency should exercise its discretion such that a court would have no law to apply." (citation omitted)).

5

The Court held the APA claims are reviewable because: (i) Plaintiffs challenge an agency policy, not individual case determinations, and (ii) State Department internal guidance to consular officers provides "meaningful standards for judicial review." *AA*, 2026 WL 1498079, at *4. Defendants contend such holding was erroneous. What Plaintiffs ultimately challenged was the consular officers' *decisions* to deny them boarding foils, not a policy—as the relief this Court ordered demonstrates. *See, e.g.*, Compl. ¶¶ 160, 163, 168, 175, 179. And this Court's conclusion that internal guidance provides the Court with a means to review the correctness of the consular officers' decisions overlooks that the consular non-reviewability doctrine bars such review exactly because consular decisions are "discretionary" and "immune from judicial inquiry or interference." *Dep't of State v. Muñoz*, 602 U.S. 899, 907 (2024) (citation omitted).

   2.   *Plaintiffs' claims are also not justiciable.*

"[F]oreign nationals seeking admission have no constitutional right to entry." *Trump v. Hawaii*, 585 U.S. 667, 703 (2018); *see Muñoz*, 602 U.S. at 908 (same). The derivative Plaintiffs are foreign nationals and have no right to enter the U.S. or to be issued a boarding foil. Plaintiffs' challenge the State Department's refusal of their boarding foils is therefore nonjusticiable.

The Court held that Plaintiffs have standing because (i) "a determination on whether the Derivative Plaintiffs have any entitlement to be issued a boarding foil involves a finding on the merits that has nothing to do with Article III standing" and (ii) the principal Plaintiffs have third-party standing. *AA*, 2026 WL 1498079, at *3-4 (citation omitted). These standing-specific holdings do not address the fundamental defect in Plaintiffs' challenge—their lack of any entitlement to entry. Regardless of standing, that defect renders the claims nonjusticiable.

### 3. *Proclamations 10949 and 10988 do not except derivative Plaintiffs.*

Because the derivative Plaintiffs were *outside* the United States when their I-730 petitions were approved, and are *still outside* the United States, they have not been granted asylum status and therefore do not meet the asylee exception in Proclamations 10949 and 10998. *See* 8 U.S.C. §§ 1158(c)(2)(D), (d)(5)(A)(i); 8 C.F.R. § 208.21(d).

The Court held that Plaintiffs fall under the Proclamations' asylum exception because they are "seek[ing] asylum." *AA*, 2026 WL 1498079, at *6. Defendants respectfully disagree with such interpretation and contend that it is unlikely to survive appeal. That narrow exception to Proclamations 10949 and 10998 is designed to ensure that the Proclamations do not impact removal protections for aliens in the United States—which is why the provision also refers to withholding of removal and the Convention Against Torture, which are common protections sought in removal proceedings but irrelevant for aliens abroad. Indeed, the Supreme Court has only recently confirmed that asylum is available only to aliens within the United States. *See Mullin v. Al Otro Lado*, 146 S. Ct. 2079, 2090 (2026); *cf. Pacito v. Trump*, 169 F.4th 895, 923 (9th Cir. 2026) (holding follow-to-join-refugee applicants have no entitlement to application processing or admission). By definition, then, an alien cannot "seek asylum" while outside the United States. *See Al Otro Lado*, 146 S. Ct. at 2090. The Proclamations' asylum exception thus has no effect on aliens who are outside the United States and do not yet have asylum status.[1]

Applying the exception here undermines the purpose of the President's proclamation to ensure there are no entries from the identified countries given serious concerns about vetting in

---

[1] Follow-to-join *refugees* are additionally barred by Executive Order 14163, *Realigning the United States Refugee Admissions Program*, 90 Fed. Reg. 8459 (Jan. 30, 2025). The Ninth Circuit upheld the Order's suspension on follow-to-join-refugee admissions and case processing. *Pacito*, 169 F.4th at 923.

those countries.[2] If there were ambiguity in the Proclamation, deference to the Executive's interpretation should have been rewarded rather than accepting Plaintiffs' dubious reading of it. There is nothing preventing derivative Plaintiffs from seeking asylum if they present themselves at a port-of-entry or when seeking admission into the United States. *See* 90 Fed. Reg. 24497, 24504 ("Nothing in this proclamation shall be construed to limit the ability of an individual to seek asylum."); *id.* at 59728 (same). But they are still covered by the Proclamation while they are *outside* the United States, and thus the boarding foils were properly refused.

    4.   *The consular non-reviewability doctrine precludes the relief Plaintiffs seek.*

Under the consular non-reviewability doctrine, courts are barred from reviewing a denial of a boarding foil or ordering the issuance of a foil. *See LaMarche v. Mayorkas*, 2024 WL 2502929, at \*5 (D. Mass. 2024) ("if the Plaintiffs could not proceed to the United States because they are denied a boarding foil based on information discovered by a consular officer during consular security processing, this court could provide no relief."); *see also Muñoz*, 602 U.S. at 907-08.

The Court held that consular-nonreviewability is not applicable because Plaintiffs purportedly challenge the lawfulness of Defendants' policy applying the Proclamations to I-730 applicants, not the consular decisions themselves. *AA*, 2026 WL 1598079, at \*7 (citing *Pietersen v. U.S. Dep't of State*, 138 F.4th 552, 560 (D.C. Cir. 2025)). This Court erred in holding as such. Again, what Plaintiffs ultimately challenged was the consular officers' *decisions* to deny them

---

[2] The narrower meaning is confirmed by Proclamation 9645. Proclamation 9645 includes identical language saying it "shall not be construed to limit the ability of an individual to seek asylum." Procl. 9645 § 6(e), 82 Fed. Reg. 45,161 (Sept. 24, 2017). It is clear that that this language does not allow entry by follow-to-join asylees because Proclamation 9645 also included a special exception for that group, which Proclamation 10998 does not include. *See id.* § 3(b)(iii) (exempting "any foreign national who has a document other than a visa, such as a transportation letter, an appropriate boarding foil, or an advance parole document, valid on the applicable effective date under section 7 of this proclamation or issued on any date thereafter, that permits him or her to travel to the United States and seek entry or admission").

boarding foils. *See, e.g.*, Compl. ¶¶ 160, 163, 168, 175, 179. That is distinct from a prospective policy challenge and precluded by consular non-reviewability. *See Matushkina v. Nielsen*, 877 F.3d 289, 295 (7th Cir. 2017) (rejecting "indirect attack on [a] visa denial"); *cf. Mullin v. Doe*, 146 S. Ct. 2121, 2136 (2026) ("challengers cannot avoid a judicial-review bar by creative pleading or clever lawyering"). And the *relief* the Court ordered violated consular non-reviewability too. Rather than simply vacate the policy, the Court also overruled the consular officers' decisions and issued injunctive relief mandating that they to issue boarding foils to numerous Plaintiffs. If district judges can command consular officials to take particular actions that are undeniably *consular* in nature, consular non-reviewability becomes illusory. This Court's Order does not (and cannot) square that circle.

5. *Plaintiffs' due process claim fails because they lack a fundamental liberty interest in the entry of their spouses and children.*

To establish a due process claim under the Fifth Amendment, Plaintiffs "must first establish that [they] ha[ve] a property or liberty interest at stake." *Smith v. Ashcroft*, 295 F.3d 425, 529 (4th Cir. 2002) (citations omitted). Aliens seeking admission like the derivative Plaintiffs, however, "ha[ve] no constitutional rights regarding [their] application[s]." *Wilson v. Zeithern*, 265 F. Supp. 2d 628, 631 (E.D. Va. 2003) (internal quotation omitted). And the principal Plaintiffs may not assert "a procedural due process right in *someone else's* legal proceeding." *Muñoz*, 602 U.S. at 916 (emphasis in original). Nor can the principal Plaintiffs claim that Defendants have burdened a fundamental liberty interest; *Muñoz* held that there is no liberty interest in residing with one's spouse in the United States. 602 U.S. at 911. *Muñoz* is thus dispositive of the constitutional claims here.

The Court distinguished *Muñoz*, reasoning that the principal Plaintiffs were not asserting a procedural due process right in derivative Plaintiffs' legal proceedings; they were instead asserting

9

a procedural due process right in their own proceedings because they were the ones who filed the I-730 applications. *See AA*, 2026 WL 1498079, at *8. This cannot be a proper basis to distinguish *Muñoz*, which also involved a standalone immigration application filed by a U.S. citizen. Moreover, even if principal Plaintiffs were asserting their own procedural due process rights, the Court still erred. As a threshold matter, an alien or U.S. citizen cannot have a property or liberty interest in a discretionary benefit, *Dekoladenu v. Gonzalez*, 459 F.3d 500, 508 (4th Cir. 2006), and a boarding foil *is* a discretionary benefit. *See* 9 FAM 203.5-3 (emphasis added). So too is derivative asylee status, *see* 8 U.S.C. § 1158(b)(3)(A), as well as other similar travel documents sought overseas, *see, e.g.*, 8 U.S.C. § 1182(d)(5)(A) (advance parole); 8 C.F.R. § 223.2(e) (refugee travel documents and reentry permits). The Court further failed to explain what *procedures* were deficient in the I-730 adjudication process; it only takes issue with the correctness of the *result* of the process. *See AA*, 2026 WL 1498079, at *8; *see also Smith v. Org. of Foster Families for Equality and Reform*, 431 U.S. 816, 847 (1977) ("Where procedural due process must be afforded … , there must be determined 'what process is due' in the particular context").

6.  *The Proclamations as applied to derivative Plaintiffs are not unconstitutionally vague.*

"[A]n enactment is void for vagueness if its prohibitions are not clearly defined." *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 167 F.4th 86, 101 (4th Cir. 2026) (citation omitted). Defendants' application of the Proclamations to derivative Plaintiffs is not vague because USCIS and the State Department clearly define "asylee," USCIS, *Glossary Terms*, Asylee, 9 FAM 203.2-2,[3] and Defendants provided Plaintiffs clear notice that their boarding-foil requests were denied pursuant to 8 U.S.C. §§ 1201(g) and 1182(f), *see generally*, Compl.

---

[3] Retrievable at: https://www.uscis.gov/glossary-term/50691 (last accessed Aug. 11, 2026).

10

The Court held that Proclamation 10949 is unconstitutionally vague because it "does not provide any guidance with respect to its application to following-to-join asylees such as the Derivative Plaintiffs who have had their I-730 petitions approved and are in the process of 'seeking asylum.'" *AA*, 2026 WL 1498079, at \*8. But as explained, the Proclamation bars entry of this group and is not "so vague and indefinite as really to be no rule or standard at all," *Boutilier v. INS*, 387 U.S. 118, 123 (1967). Moreover, the void-for-vagueness doctrine and the harm it exists to prevent are not implicated here because the Proclamation does not proscribe any conduct that Plaintiffs must be on notice of. *See Sessions v. Dimaya*, 584 U.S. 148, 155-56 (2018) ("The void-for-vagueness doctrine … guarantees that ordinary people have 'fair notice' of the conduct a statute proscribes.").

## B. Defendants will suffer irreparable harm, and the remaining equitable factors favor a stay.

Absent a stay, Defendants will suffer immediate irreparable harm. The Court's Order thwarts the Executive Branch's constitutional and statutory responsibility to protect our nation's security and with respect to immigration affairs on an issue potentially affecting thousands of aliens. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (explaining the government "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people"); *see also Hawaii*, 585 U.S. at 704 ("[W]hen it comes to collecting evidence and drawing inferences on questions of national security, the lack of competence on the part of the courts is marked." (citation omitted)); *id.* ("Any rule of constitutional law that would inhibit the flexibility of the President to respond to changing world conditions should be adopted only with the greatest caution, and our inquiry into matters of entry and national security is highly constrained." (citation omitted)).

11

In addition, the Court's nationwide remedy irreparably harms the Executive Branch and the public interest by invalidating an important public safety measure. The President determined that suspending the entry of aliens from Plaintiffs' home countries is necessary to protect public safety because there are vetting deficiencies and gaps in those countries' systems. Procl. 10949 § 1; Procl. 10998 § 1; *see* Exhibit A, Declaration of Stuart Wilson ("Wilson Decl.") ¶ 2; Exhibit B, Declaration of Nicolas Bartell ("Bartell Decl.") ¶¶ 7-9. The Court's Order negates the President's determination as to asylum applicants before the covered countries have fixed their protocols and before "USCIS is prepared to fully implement maximum vetting capabilities." Bartell Decl. ¶¶ 11-12. The Order also compels the State Department "to issue boarding foils to the derivative Plaintiffs on a compressed timeline" that "would require consular officers to conduct [Plaintiffs'] eligibility review under artificial time constraints, undermining the individualized, careful review that the Proclamations are designed to ensure for nationals of countries with deficient vetting infrastructure." Wilson Decl. ¶ 3. This would force "the Department to bypass or compress established procedures for the named Plaintiffs alone." *Id.* ¶ 4. It also may cause logistical difficulties coordinating with partner agencies should derogatory information on the derivative Plaintiffs surface during the pre-boarding-foil security checks. *Id.* It would also strain the State Department's finite consular resources by forcing them to be diverted from other projects to the Plaintiffs in this case. *Id.* ¶ 6.

The public harm caused by the Court's Order cannot be undone even if Defendants succeed on appeal. *See id.* ¶ 5. "Once admitted, the named derivative Plaintiffs would be present in the United States, and their removal—if later required based on the discovery of information not available to the consular officer as a result of the compressed review or issuance ordered by the court—" would be very difficult to achieve due to logistical and legal issues that would be

12

implicated. *Id.* ¶ 5; *see* Bartell Decl. ¶ 11 (discussing logistical difficulties). The public safety, meanwhile, is put at risk; the Court's Order and vacatur "prevent[] USCIS from adequately addressing the risks identified in the high-risk countries, developing plans to manage these risks, and adjudicating petitions and applications from foreign nationals of these countries in a way that is fair, uniform, and consistently protects national security, the immigration system, and the American people." Bartell Decl. ¶ 10. USCIS "will miss critical national security, public safety, or integrity concerns that put the American people and the lawful immigration system at risk." *Id.* ¶ 11.

The harm to Defendants and the public outweighs Plaintiffs' harms. And to the extent the Order extends beyond Plaintiffs, a stay will cause them no harm at all, yet at the same time it will cause the United States immense harm. As such, the balance of harms tips in Defendants' favor.

## C. The Court's universal remedy is overbroad.

The Court universally vacated Defendants' application of the Proclamations to asylees. Such relief, which extends far beyond the parties, conflicts with *Trump v. CASA* and is unsupported by the APA.

The Supreme Court has repeatedly emphasized that relief must be tailored to the injury established by the parties before the court and limited to the inadequacy that produced the plaintiffs' injury. *See, e.g.*, *Murthy v. Missouri*, 603 U.S. 43, 61 (2024). Recent decisions likewise underscore the need to carefully consider the proper scope of relief, particularly where the challenged agency action implicates broad questions of federal policy and administration. *See, e.g.*, *CASA*, 606 U.S. at 847 n.10, 856 (prohibiting universal injunctions but not addressing the appropriateness of universal vacatur). While pre-*CASA* Fourth Circuit decisions have allowed

universal vacatur, *see, e.g.*, *Sierra Club v. U.S. Army Corps of Engineers*, 909 F.3d 635, 655 (4th Cir. 2018), the Circuit has not grappled with the issue post-*CASA*.

Defendants would likely succeed on this issue on appeal. *First*, universal vacatur under the APA is no different from universal injunctive relief, which *CASA* forbids. While some courts have distinguished *CASA* by reasoning that *CASA* only pertained to equitable relief, whereas vacatur is statutory, *see, e.g.*, *Am. Fed. of Teachers v. Dep't of Educ.*, 796 F. Supp. 3d 66, 121 (D. Md. 2025), such courts overlook that vacatur is itself equitable relief even though it appears in the APA. That is because the APA does not create new remedies but instead looks to pre-existing remedies available in the "form[s] of legal action" known at the time of the APA's enactment. *See* 5 U.S.C. § 703; *see also, e.g.*, S. Rep. No. 752, 79th Cong., 1st Sess. 44 (1945) (explaining that the APA "declares the existing law concerning the scope of judicial review").

*Second*, 5 U.S.C. § 706 pertains only to "Scope of Review" and does not authorize universal vacatur. While 5 U.S.C. § 706(2) states that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be," *e.g.*, arbitrary and capricious, Section 706(2) is not a remedy provision at all; rather, it is merely a direction to a reviewing court to "set aside," or disregard unlawful agency action in the case before it. *See United States v. Texas*, 599 U.S. 670, 695-96 (2023) (Gorsuch, J., concurring); *Tx. Medical Ass'n v. U.S. Dep't of Health and Human Servs.*, No. 23-40605 (5th Cir. Aug. 11, 2026) (Ho, J., concurring) (same).

In any event, even if universal vacatur was *authorized* by the APA, it hardly follows that it is mandated—or appropriate here. Courts have repeatedly recognized the authority of district courts *not* to issue complete vacaturs. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165-66 (2010) (less drastic remedy such as partial vacatur available); *Texas*, 599 U.S. at 702 ("Even if [universal vacatur were authorized by the APA], a district court should think twice—and

14

perhaps twice again—before granting such sweeping relief." (citation omitted)) (Gorsuch, J., concurring).

Moreover, the Court's issuance of universal vacatur here goes beyond the relief Plaintiffs requested in their Complaint. Plaintiffs only requested that Defendants' policy be "set aside" "*as used*" to deny boarding foils to Derivative Plaintiffs … ." Compl., Prayer for Relief ¶ 1 (emphasis added). This error independently warrants reversal of the Court's vacatur order.

## II.    An immediate administrative stay is also warranted.

"The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997). That includes the discretion to enter an administrative stay. *See, e.g.*, *Doe 1 v. U.S. Office of Dir. of National Intelligence*, 2025 WL 540410, at *1 (E.D. Va. Feb. 18, 2025) (Trenga, J.). Courts in this circuit have "consider[ed] the following factors when determining whether to grant a stay: (1) the length of the requested stay; (2) the hardship that the movant would face if the motion were denied; (3) the burden a stay would impose on the nonmovant; and (4) whether the stay would promote judicial economy by avoiding duplicative litigation." *Stone v. Trump*, 402 F. Supp. 3d 153, 160 (D. Md. 2019) (citation omitted).

An administrative stay is warranted here. Defendants only request that the administrative stay last for the time it takes the Court to decide Defendants' motion to stay pending appeal. Denying an administrative stay would impose great hardship on Defendants; they would be forced to admit aliens whose entry Defendants posit is barred by a lawful presidential proclamation, with no way to remediate the harm should this Court's interpretation be wrong. *See supra* Stuart Decl. That hardship outweighs any burden that waiting a little longer would impose on Plaintiffs. Especially to the extent the Court administratively stays aspects of the Order that extend to non-

parties. An administrative stay would also promote judicial economy by preserving the status quo until this motion can be decided.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request the Court enter an immediate administrative stay and then stay the July 29, 2026 Order and Judgment pending appeal. In the alternative, the Court should stay those aspects of the Order and Judgment that extend beyond the named Plaintiffs to non-parties.

//

//

Dated: August 12, 2026                    Respectfully submitted,

                                          TODD BLANCHE
                                          ATTORNEY GENERAL

                                          THEOPHANI K. STAMOS
                                          FIRST ASSISTANT UNITED STATES
                                          ATTORNEY

                        *By*:  _____/s/_____
                                          CHRISTIAN J. COOPER
                                          Special Assistant United States Attorney
                                          Office of the United States Attorney
                                          Justin W. Williams U.S. Attorney's Building
                                          2100 Jamieson Avenue
                                          Alexandria, Virginia 22314
                                          Tel: (703) 299-3831
                                          Fax: (703) 299-3938
                                          Email: christian.cooper@usdoj.gov
                                          *Counsel for Defendants*