**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| A.A., *et al.*,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*,<br><br>　　　　　Defendants. | )<br>)<br>)<br>)<br>)　　Case No. 1:25-cv-01819-AJT-WEF<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## JOINT STATUS REPORT

Plaintiffs and Defendants (hereinafter "Parties"), by and through undersigned counsel, respectfully file this Joint Status Report pursuant to the Court's Order on July 29, 2026. Dkt. 128.

### Defendants' Statement

Defendants have acted diligently and consistent with the Court's July 29, 2026, Order. Both the U.S. Embassy in Dushanbe, Tajikistan and the U.S. Embassy in Islamabad, Pakistan have already initiated the mandatory security vetting process for Plaintiff Families AA, CC, DD, and EE. Plaintiff Family BB's petition has always resided in Dushanbe, requires no transfer, and post has already submitted the required security check and will reach out directly to the applicant. Cases previously held at the National Visa Center for Plaintiff Families FF and GG have already been mailed to, and have arrived at, U.S. Embassy Islamabad, where they are being processed. Defendants only received Plaintiffs' request to transfer various relevant petitions—as conveyed through the Department of Justice—one day before the status report deadline, and any resulting timeline pressure is attributable to the timing and method of that request, not to any

1

lack of diligence by Defendants. Finally, instructions directing posts to realign their policies and practices consistent with the Court's vacatur are pending clearance within the Department.

*First*, Defendants are undertaking the necessary steps to process Plaintiff Families AA, CC, DD, and EE's cases. Some elements of this process require interagency coordination and cannot be unilaterally accelerated by the Department. Additional steps that must be completed are a function of the transfer process Plaintiffs themselves must initiate, and may result in delays if not undertaken at the earliest opportunity. Under longstanding, publicly available Department guidance—9 FAM 504.4-9 and 9 FAM 504.4-8(c)—an applicant seeking to have a case transferred to a different post bears the responsibility of locating a receiving consular unit and initiating that request. This guidance applies equally to I-730 follow-to-join beneficiaries and has been publicly available throughout this litigation. Defendants have also separately answered several questions from Plaintiffs' counsel, transmitted through DOJ, regarding the proper transfer process. The Department's responsiveness to those inquiries does not shift or alleviate Plaintiffs' independent responsibility to submit a transfer request where one is required. Defendants only received a request to transfer the relevant petitions, as conveyed through DOJ rather than the correct transfer channels, one day before the status report deadline. Any resulting timeline pressure is therefore attributable to the method and timing of Plaintiffs' own request, not to any lack of diligence by Defendants. As to Plaintiff Family BB, whose petition has always been with U.S. Embassy Dushanbe and requires no transfer, post has already initiated the necessary steps to process this case and will reach out to the applicant directly for any additional information needed.

*Second*, Plaintiff Families FF and GG's petitions have already arrived at post and are being actively processed. These cases, previously held at the National Visa Center, have since

been mailed to and received by U.S. Embassy Islamabad. To the extent Plaintiff Families FF and GG likewise wish to request transfer to U.S. Embassy Dushanbe considering limitations on entry to Pakistan instituted by that country's government that are beyond the control of the Department, the same procedure described above applies: Plaintiffs must initiate that request directly with the relevant post. Defendants are prepared to work with post to expedite handling of any such request once received, consistent with the diligence already extended to Plaintiff Families AA, CC, DD, and EE.

*Third*, Defendants are actively working to implement the Court's vacatur and finalizing implementing guidance to posts. Specifically, instructions directing posts to realign their policies and practices consistent with the Court's ruling are pending clearance within the Department. Defendants will provide the Court with further detail on the status and substance of that implementation guidance as it becomes available and are prepared to file a supplemental statement on this issue on a schedule the Court deems appropriate.

**<u>Plaintiffs' Statement</u>**

This Joint Status Report marks the first time Plaintiffs have received any details from Defendants regarding the status of their cases. While Plaintiffs are encouraged by Defendants' representations, they wish to provide the Court with a complete picture of which questions have been answered, when those answers were received, and which important questions remain unanswered.

Plaintiffs acted diligently following the Court's July 29 Order, immediately investigating how to reach a U.S. embassy to pick up their boarding foils or complete processing:

- **Tuesday, August 4:** Plaintiffs posed a series of questions to Defendants, including whether the State Department was contemplating particular embassy

3

locations for Plaintiffs' processing and whether Defendants could facilitate Plaintiffs' visa applications to those countries. While awaiting answers, Plaintiffs conducted their own research to determine which countries they could access, as it is generally very difficult for Afghan nationals to get visas.

- **Thursday, August 6:** Defendants confirmed they would not facilitate Plaintiffs' visa applications and that boarding foils would issue at the embassies where Plaintiffs had originally interviewed unless they requested a transfer. Having learned that Pakistan is not issuing visas to Afghan nationals due to ongoing conflict, Plaintiffs posed follow-up questions the same day, including whether the U.S. Embassy in Islamabad was the only processing location available to them, as Plaintiffs understood that it has been designated the primary processing post for Afghan nationals.

- **Friday, August 7:** Defendants confirmed that Plaintiffs could request transfers to another embassy location and were not required to process in Islamabad.

- **Monday, August 10:** Plaintiffs asked how to request transfers and how long they would take. Defendants responded later that day that applicants must contact the post where they interviewed and that transfers can take several weeks because paper files must be sent by mail. During a call between counsel that afternoon, Plaintiffs asked specifically about the timeline for transfers to U.S. Embassy Dushanbe, Tajikistan—the location they had determined would be most viable for them to reach.

- **Tuesday, August 11:** Defendants responded that the Islamabad-to-Dushanbe transfer typically takes two to three weeks. Having received that last piece of the

4

puzzle, Plaintiffs then formally requested, through an e-mail to Defendants' counsel, that their files be transferred to Dushanbe on an expedited basis.

- **Wednesday, August 12:** This afternoon at 4:46 p.m., Defendants responded that Plaintiffs must make the transfer requests directly to the U.S. embassy in Islamabad and that making the request through Defendants' counsel "alone would not be the appropriate forum." And while Defendants represented that the embassy was aware the requests would be incoming, they have not committed to completing the transfer within any period of time despite Plaintiffs' explicit requests.

This timeline demonstrates that Plaintiffs requested transfers as soon as they had the information necessary to make that decision. Critically, however, the timing of Plaintiffs' transfer requests should have had no bearing on whether they received meaningful instructions from any embassy about next steps—and as of this filing, they have not. Plaintiff Family BB's situation is illustrative: their case has always been with U.S. Embassy Dushanbe and requires no transfer, yet Defendants have not provided the family with instructions on how to retrieve the boarding foils that are due to issue tomorrow. Plaintiffs also note that another important question—how long their boarding foils will remain valid once issued—has been pending since August 4 without response. At this point, further Court intervention is required to ensure its Order is executed by Defendants without additional delay.

Similarly, this Joint Status Report is the first time Plaintiffs have received any substantive response to the questions they posed on August 4 regarding Defendants' implementation of the Court's vacatur. Plaintiffs look forward to receiving further detail on the status and substance of the implementation guidance Defendants describe.

In light of the foregoing, Plaintiffs respectfully request that the Court require Defendants to do the following: (1) make the boarding foils for Plaintiff Family BB available to be picked up at the U.S. Embassy in Dushanbe by August 13, 2026; (2) complete the transfer of the files of Plaintiff Families AA, CC, DD, and EE to the U.S. Embassy in Dushanbe by whatever means necessary so that their boarding foils are available to be picked up at that location by August 19, 2026; (3) complete the transfer of the files of Plaintiff Families FF and GG to the U.S. Embassy in Dushanbe by whatever means necessary so that their files are received by August 19, 2026 and are available for immediate processing thereafter; (4) provide documentation to the Court in the next seven days reflecting that Defendants have informed all affected consulates and embassies of the Court's order of vacatur and instructed them to comply with it; and (5) require the Parties to provide a Joint Status Report in seven days.

Dated: August 12, 2026

/s/_____

Ryan T. Scarborough (VSB No. 43170)
William P. Ashworth (*pro hac vice*)
Edward John Bennett (VSB No. 40118)
Adam Daniel Harber (*pro hac vice*)
Danielle J. Barondess (*pro hac vice*)
Julian Yigal Kritz (*pro hac vice*)
Lindsay P. Hannibal (VSB No. 97008)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
rscarborough@wc.com
washworth@wc.com
ebennett@wc.com
aharber@wc.com
dbarondess@wc.com
jkritz@wc.com

Respectfully submitted,

TODD W. BLANCHE
ATTORNEY GENERAL

THEOPHANI K. STAMOS
FIRST ASSISTANT UNITED STATES
ATTORNEY

_____/s/_____
ELIZABETH A. SPAVINS
Assistant United States Attorney
CHRISTIAN J. COOPER
Assistant United States Attorney
Office of the United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel:    (703) 299-3785
Fax:    (703) 299-3983
Email: lizzie.spavins@usdoj.gov

lhannibal@wc.com                                        *Counsel for Defendants*

Ghita Schwarz (*pro hac vice*)
Guadalupe Aguirre (*pro hac vice*)
Pedro Sepulveda (*pro hac vice*)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, NY 10004
Telephone: (516) 838-1655
gschwarz@refugeerights.org
laguirre@refugeerights.org
psepulveda@refugeerights.org

*Counsel for Plaintiffs*