IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| AA, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 1:25-cv-01819 (AJT/WEF) |

**ORDER**

Before the Court is Defendants' Motion to Stay Pending Appeal this Court's July 29, 2026 Order and Judgment granting summary judgment for Plaintiffs, [Doc. Nos. 128–29], or in the alternative, stay pending appeal the aspects of the Order that impose universal vacatur under the APA. [Doc. No. 137] (the "Motion"). Plaintiffs oppose the Motion. [Doc. No. 146]. For the reasons stated below, the Motion is **DENIED**.

A stay pending appeal requires the movant to demonstrate: (1) a likelihood of success on the merits; (2) irreparable harm absent a stay; (3) that the balance of equities tips in the movant's favor; and (4) that the stay serves the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). Defendants bear the burden of demonstrating a "strong showing" of likelihood of success on appeal. *Id.* A stay is an "extraordinary relief," and the movant bears a "heavy burden." *Winston-Salem/Forsyth Cnty. Bd. of Ed. v. Scott*, 404 U.S. 1221, 1231 (1971). Defendants have not met their burden to warrant the requested stay.

The factual background of this case has been previously summarized by this Court. *See* [Doc. No. 103]. Relevant to this Motion, Plaintiffs are Afghan asylees residing in the United States

("Principal Plaintiffs") and their spouses and children in Afghanistan who hold approved petitions for derivative asylum status ("Derivative Plaintiffs"). [Doc. No. 111] ¶ 14. The Principal Plaintiffs filed I-730 petitions seeking asylum for the Derivative Plaintiffs through the "follow to join" process, which affords the same status to the family members of asylees. *Id.* ¶ 15. After substantial vetting, USCIS approved Derivative Plaintiffs' I-730 petitions, leaving only a travel-eligibility determination before Derivative Plaintiffs could travel to the United States for reunification. *Id.*

In June 2025, before the Derivative Plaintiffs were interviewed and admitted, President Trump issued Proclamation 10949, suspending entry of nationals of nineteen countries, including Afghanistan. In December 2025, the President issued Proclamation 10998, continuing this travel ban. Both Proclamations contain an asylum exception providing that they "shall not apply to an individual who has been granted asylum" and shall not "be construed to limit the ability of an individual to seek asylum." Proclamation No. 10949, 90 Fed. Reg. 24,497, 24,504 (June 4, 2025); Proclamation No. 10998, 90 Fed. Reg. 59,717, 59,728 (Dec. 16, 2025). Notwithstanding that exception, the State Department adopted a blanket policy applying the Proclamations to categorically deny boarding foils to follow-to-join asylees from countries subject to the travel ban. [Doc. No. 111] ¶¶ 10–11, 13.

In October 2025, Plaintiffs filed this action challenging the Defendants' application of the presidential proclamations to Plaintiffs' boarding foil applications. [Doc. No. 2]. On May 28, 2026, this Court issued a memorandum opinion and order denying Defendants' motion to dismiss, holding that Plaintiffs had standing, that Defendants' policy was reviewable under the APA, and that the challenge to Defendants' policy was not barred by the consular nonreviewability doctrine.

[Doc. No. 103]. The Court also held that Derivative Plaintiffs are clearly "seek[ing] asylum" and therefore fall within the Proclamations' asylum exception. *Id.* at 13–14.

On July 29, 2026, after the parties filed cross-motions for summary judgment, in which the parties agreed that there were no disputed facts to necessitate a trial, the Court granted judgment in Plaintiffs' favor on their APA claims and applied "the standard APA remedy" by vacating Defendants' unlawful policy under Section 706(2)(A) of the Administrative Procedure Act. [Doc. No. 128]; [Doc. No. 135], Hr'g Tr. at 18 (July 29, 2026).[1] The Court ordered Defendants to issue boarding foils to the five interviewed families within fifteen days and to complete individualized adjudication, including interviews and medical exams, of the remaining two families within thirty days. *Id.* That process remains underway. *See* [Doc. Nos. 139, 145].

In support of their Motion arguing for a stay pending appeal, Defendants repeat the same arguments the Court twice rejected, namely that (1) this Court's decision violates the consular non-reviewability doctrine; (2) that Plaintiffs do not qualify for any asylum exception under the presidential proclamations; (3) that Plaintiffs' procedural due process claim is legally infirm; (4) that Plaintiffs lack standing; (5) that Plaintiffs' APA claims are not reviewable; and (6) that the Court granted overbroad relief by ordering universal vacatur of Defendants' application of the Proclamation to derivative asylee applicants. [Doc. No. 137]. As noted above, the Court has already rejected most of these arguments at earlier stages in this case. *See* [Doc. Nos. 103, 128].

[1] The Court's Motion to Dismiss Order contains the bulk of its analysis and rationale in deciding the various legal issues Defendants raised at the pleading stage. [Doc. No. 103]. Defendants move[d] for summary judgment "[f]or the reasons set forth in Defendants' motion to dismiss," [Doc. No. 121] at 2–3, which this Court rejected for the same "reasons stated from the bench and in [the Court's] May 28, 2026 Memorandum Opinion and Order denying Defendants Motion to Dismiss." [Doc. No. 128].

For these same reasons, the Court concludes that Defendants have not demonstrated a likelihood of success on the merits of their arguments in support of their requested stay.

Defendants' argument that this Court's vacatur "conflicts with *Trump v. CASA* and is unsupported by the APA," [Doc. No. 137] at 13, is similarly unavailing. The Supreme Court made clear in *CASA* that "[n]othing" about its decision "resolves the distinct question whether the Administrative Procedure Act authorizes federal courts to vacate federal agency action." *Trump v. CASA*, 606 U.S. 831, 847 n.10 (2025). Indeed, *CASA* decided only whether "a federal court's equitable authority under the Judiciary Act" permits universal injunctions—nothing more. *Id.* at 847. And the circuits that have addressed this issue unanimously agree that complete relief through vacatur, the APA's default remedy, remains appropriate after *CASA*. *See, e.g.*, *Refugee & Immigrant Ctr. for Educ. & Legal Servs. v. Mullin*, 174 F.4th 81, 119–20 (D.C. Cir. 2026) ("Vacatur under Section 706 functions quite differently from an injunction."); *Nat'l TPS All. v. Noem*, 166 F.4th 739, 760 (9th Cir. 2026) ("Textually, it would be difficult to square the plain meaning of a 'set aside'—to 'cancel, annul, or revoke'— with the plain meaning of an injunction— a judicial order that 'tells someone what to do or not to do.'"); *Tex. Med. Ass'n v. U.S. Dep't of Health & Human Servs.*, 2026 WL 2322331, at *8–9 (5th Cir. Aug. 11, 2026).

Defendants have, therefore, failed to make the required "strong showing" that they are likely to succeed on any of their arguments in the Fourth Circuit. *Nken*, 556 U.S. at 434. Defendants have similarly failed to show irreparable injury or that the balance of equities and public interest considerations tip in their favor.

For the above reasons, it is hereby

**ORDERED** that the Motion be, and the same hereby is, **DENIED**.

The Clerk is directed to forward a copy of this Order to all counsel of the record.

August 28, 2026
Alexandria, Virginia

/s/
Anthony J. Trenga
Senior United States District Judge